# Wytheville.

## WATKINS v. VENABLE.

### JUNE 20, 1901.

1. APPEAL AND ERROR—*Quo Warranto—Court of Appeals.*—This court has no original jurisdiction in cases of *quo warranto*, nor has any judge thereof jurisdiction to issue the writ and send the case to the Circuit Court to be proceeded with, as in cases of injunction.

2. QUO WARRANTO—*Process—Parties.*—Under our statute, the first notice that a defendant has of a *quo warranto* proceeding is the writ itself, and he does not become a party to it until the writ is awarded. If a circuit court refuses to award the writ the defendant is no party to the proceeding in that court, and cannot be made a party on a writ of error from this court, and process against him here, if awarded, will be quashed.

3. QUO WARRANTO—*Discretion.*—Neither at common law under modern practice, nor under our statute, is the applicant for a writ of *quo warranto* entitled to it as a matter of absolute right; but whether it shall be awarded or not is subject, in a considerable degree, to the exercise of a wise judicial discretion by the trial court, whose judgment will not be disturbed unless plainly erroneous.

4. QUO WARRANTO—*Proceeding under Code, Ch. 145—Title to Office.*—The object of chapter 145 of the Code was to simplify the procedure in *quo warranto* cases, and to define the cases in which the writ might be used, and not to narrow the writ, or make it less comprehensive in trying the title to an office than it was common law, where title to an office could be tested if the incumbent were not in possession *de jure*, although he might be a full *de facto* officer. The provisions of that chapter are not restricted to cases in which the incumbent is a mere intruder or usurper without color or pretence of title.

5. APPEAL AND ERROR—*Petition for Quo Warranto.*—A writ of error lies from this court to a judgment of a circuit court refusing to entertain a petition for writ of *quo warranto* tendered by a *bona fide* claimant of an office to test the title thereto.

6. CLERKS—*County and Circuit Courts—Effect of New Census.*—Whether there shall be elected at a general election a separate clerk for the

circuit court of a county is determined by the last general census taken before the election. If such census shows a population of less than fifteen thousand inhabitants, the clerk of the county court is *ex officio* clerk of the circuit court for a full term of six years, regardless of what may be shown by a census taken during his term. If he die during his term, but after a new census showing more than fifteen thousand inhabitants, his successor holds, as he would have held, the office of clerk of both courts for the residue of his term.

7. CONSTITUTIONAL LAW—*Clerks.*—Article VII., section 1, of the Constitution with reference to the election of clerks is not self-executing, and to give it effect legislation was necessary.

Error to a judgment rendered by the judge of the Circuit Court of Prince Edward county, in vacation, January 2, 1901, on an application for a writ of *quo warranto*, in which the plaintiff in error was the relator, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*W. H. Mann,* for the plaintiff in error.

*Caskie & Coleman,* for Woodson Venable, named as defendant.

BUCHANAN, J., delivered the opinion of the court.

The Commonwealth's attorney for Prince Edward county, at the relation of E. J. Whitehead, applied to the Judge of the Circuit Court of that county for a writ of *quo warranto*. In his petition he alleged that, according to the census of the United States immediately preceding the election for clerk in May, 1899, that county had a population of less than fifteen thousand inhabitants, and in accordance with the constitution and laws of the Commonwealth, W. H. Thaxton was elected clerk of the County Court, and as such was *ex-officio* clerk of the Circuit Court; that in July of that year Thaxton departed this life, and in August following the relator was appointed clerk of the

County Court, and, having qualified as required by law, became clerk of that court, and also clerk of the Circuit Court until the 30th day of June following the next regular election for clerk, which will not occur until May, 1905; that as such clerk he was in charge of and was faithfully discharging the duties of the office of clerk of the Circuit Court; that notwithstanding these facts, the judge of the Circuit Court, under a mistaken view of his powers and duties, as the petitioner believed, appointed one, Woodson Venable, clerk of the Circuit Court, who thereupon gave the bonds required, and immediately demanded that the relator should turn over to him all the records, books, and papers of the Circuit Court clerk's office, which the relator did under protest, then and still asserting his right to the office, and prayed for a writ of *quo warranto* against the said Venable to show by what authority he was holding the office of clerk of the Circuit Court.

The judge of the Circuit Court was of opinion—the general census of the United States for 1900, showing that the county had a population of more than 15,000 inhabitants—that the petition did not make a case for awarding the writ, and refused to issue it. Thereupon the petitioner applied to this court by petition, filing there with his petition to the judge of the Circuit Court, and his order refusing the writ, in which the petitioner prayed that this court would award the writ, or that the order of the judge of the Circuit Court refusing it be reversed, and the writ directed to issue.

This court has no original jurisdiction in cases of *quo warranto*. Constitution, Art. VI., sec. 2.

Neither has a single judge of this court, as in cases of injunctions refused by the Circuit or Corporation Court, or judge, jurisdiction to issue the writ and send the case to the Circuit Court to be proceeded with. That power is conferred by section 3438 of the Code, and only authorizes its exercise in cases where an injunction has been refused by the Circuit or Corporation Court,

or judge having original jurisdiction to grant the injunction prayed for. If this court has jurisdiction, it is as an appellate court.

A writ of error was granted, and the clerk of this court issued process against Mr. Venable, against whom the writ of *quo warranto* was sought.

By the terms of our statute regulating a *quo warranto* proceeding, the writ is the first notice the defendant has of the proceeding, and he does not become a party to it until the writ has been awarded. Section 3024 of the Code. As the circuit judge refused to issue the writ, Mr. Venable never became a party to the original proceeding, and cannot be made a party here. The process against him must, therefore, be quashed.

If this court has jurisdiction, all that it can do will be to review the action of the circuit judge in refusing the writ, and if it be of opinion that the writ ought to have been awarded, reverse his action and award the writ.

Neither at common law, under the modern practice, nor under the provisions of our statute in a case like this, is an applicant for the writ entitled, as a matter of absolute right, to have it issued, but whether it shall be awarded or not is subject, in a considerable degree, to the exercise of a wise judicial discretion. Smart on Mandamus and Quo Warranto, &c. (Am. Ed. 1888), pp. 121-3; High's Extra. Leg. Rem., secs. 605, 628; Code, ch. 145, sec. 3024. In the exercise of this discretion, upon the application of a private relator, says Mr. High, "it is proper for the court to take into consideration the necessity and policy of allowing the proceeding as well as the position and motives of the relator in proposing it, since this extraordinary remedy will not be allowed, merely to gratify a relator who has no interest in the subject of inquiry. The court will also weigh the considerations of public convenience involved, and will compare them with the injury complained of in determining whether to grant or refuse the application. And whenever it is apparent that the filing of the ap-

plication would result in no practical benefit, as where there is no one claiming the office in opposition to the respondent, and the time will expire before a trial of the right can be had, or where a new election for the office is about to occur, which will afford full redress to the relators, the court may properly refuse the application for leave to file the information." See also Smart on Mand. and Quo War., pp. 147 to 157. None of the circumstances which should control a court in refusing to award the writ existed in this case. The relator himself claimed title to the office for the full term, which would not expire for more than four years. He was prompt in asserting his claim to it, and no inconvenience could have resulted to the public from issuing the writ. As the judge who refused to issue the writ was the same judge who appointed Mr. Venable to the position of clerk of the Circuit Court, it is apparent that his refusal to issue the writ was not based upon any of the grounds upon which the court in the exercise of its discretion may properly refuse to award the same, but because he was of the opinion that under Art. VII., sec. 1, of the Constitution, and the provisions of sections 93 and 106 of the Code, as amended, there was a vacancy in the office of the clerk of the Circuit Court, which he was authorized to fill.

It was suggested in argument, that the provisions of chapter 145 of the Code, regulating the procedure in cases of *quo warranto*, and defining the cases in which the writ will lie, does not apply to a case where the incumbent in office is an officer executing his duties under some color of right and some pretence of title, either by election or by appointment, but is applicable only to cases in which the incumbent is a mere intruder or usurper without color or pretence of title.

The object of the provisions of chapter 145 of the Code, introduced into our statute law for the first time by the Code of 1887, was to simplify the procedure in *quo warranto* cases, and to define the cases in which it might be used. It was not intended, we think, to narrow the use of the writ, and make it less compre-

hensive in trying the title to an office than the common law pro-
ceedings of *quo warranto*, or of an information in the nature of
a writ of *quo warranto*, in which the title to the office could be
tested if the incumbent was not in possession *de jure*, although
he might be a full *de facto* officer.   Smart on Quo. War., side p.
121 to 124; High on Ex. Rem., sec. 614.   With us persons very
seldom intrude into or usurp a public office without some color
or pretence of title, either by election or appointment.   To con-
strue that the provisions of chapter 145 to try the title to an of-
fice only applied to such cases would so narrow the common law
use of the writ as to render the proceeding practically of little
value.

In some jurisdictions judgments or orders made in the exercise
of a judicial discretion are never subject to review by an appel-
late court.   With us, however, such is not the rule, and in many
cases such judgments and orders are reviewable, yet the action
of a trial court in the exercise of its judicial discretion will not
be reversed unless it is plainly erroneous.   *Fant* v. *Miller &
Mayhew*, 17 Gratt. 187; *Reynolds* v. *Zink*, 27 Gratt. 29; *Miller*
v. *Wills*, 95 Va. 337, 351; *Hite's Case*, 96 Va. 489, and cases
cited.   No stronger case could be presented for review by an
appellate court than the refusal of a trial court to permit a citizen
claiming title to a valuable office to test his title to it in the
manner specially provided by law for that purpose.

The order of the judge in this case was final, the matter in
controversy was title to an office, a matter not merely pecuniary,
and was therefore under the provisions of sections 3454 and
3455 of the Code, one to which a writ of error from this court
will lie.

That the circuit judge erred in refusing to award the writ we
have no doubt.   By section 1, Article VII., of the Constitution,
it is provided, among other things, that there may be elected by
the qualified voters of the county one county clerk, who shall also
be clerk of the Circuit Court, except that in counties containing

fifteen thousand inhabitants, there may be a separate clerk of the Circuit Court. This provision is not self-executing, and to give it effect legislation was necessary. Cooley's Const. Law, p. 100; *Prison Ass.* v. *Ashby,* 93 Va. 667, and cases cited.

In giving effect to this provision of the Constitution, the Legislature enacted section 93 of the Code. By that section it is provided that "In every county containing a population of less than fifteen thousand there shall be a clerk of the County Court of said county, who shall *ex-officio* be also clerk of the Circuit Court of said county, and in every county containing a population of fifteen thousand or more, there shall be a separate clerk of the Circuit Court of the said county. The said clerks shall be elected by the qualified voters of the respective counties at the general election in May of the year 1893, and every six years thereafter, and shall hold their offices for the term of six years. The population in the counties, as at any such general election, shall be determined according to the last general census preceding such election."

The proper construction of this section as to the question involved in this case is that where, by the last general census preceding the election for clerk, any county contains a less population than fifteen thousand, a clerk of the County Court only shall be elected. He is *ex-officio* clerk of the Circuit Court during his term of office. If before the next general election for clerks, another general census has been taken by which it appears that the population of the county is fifteen thousand or more, then at such succeeding general election a separate clerk for the Circuit Court shall be elected; but until that election the rights and duties of the clerks elected at the preceding general election are unaffected by the new census. If the population of a county is fifteen thousand or more by the last general census preceding a general election for clerks, two clerks are to be elected, one for the County Court and the other for the Circuit Court, who hold for the term of six years, although during their term of office

another general census may be taken which shows that the county has less than fifteen thousand population. Whether there shall be one or two clerks elected in a county at a general election, is determined by the last general census preceding the election, and when elected they hold their offices until the end of the term (six years), without regard to any changes that may take place in the population of the county during their term of office.

We are of the opinion that the petition presented to the circuit judge made a clear *prima facie* case for the writ, and that it should have been awarded. This court will, therefore, reverse the order of the circuit judge refusing it, and remand the cause with direction that the writ be awarded in accordance with the provisions of section 3024 of the Code.

*Reversed.*