THE STATE OF FLORIDA, *ex rel.* B. H. BRIDGES, *Plaintiff in Error,* v. A. M. HENRY, *Defendant in Error.*

1. Removal from office being authorized only for certain causes, the court may inquire into the existence of the jurisdictional facts, that is whether the facts upon which the removing power acted were legal cause for removal.

2. A writ of error lies to the refusal to issue a writ of quo warranto.

This case was decided by the Court En Banc.

Writ of error to the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*Neeley & Simmons,* for Plaintiff in Error;

*F. T. Myers,* for Defendant in Error.

PARKHILL, J.—We think the writ ought to issue in this case, and that the Circuit Judge erred in denying the petition.

Removal from office is authorized only for certain causes in this State and the court may inquire into the existence of the jurisdictional facts, that is whether the facts upon which the removing power acted were legal cause for removal. 23 Am. & Eng. Ency. Law (2nd ed.) 429; State *ex rel.* Attorney General v. Johnson, 30 Fla., 433, 11 South. Rep. 845. A writ of error lies to the refusal to issue the writ of quo warranto herein.

The petition herein seeks to present the jurisdictional fact whether the conduct of relator upon which he was removed from office was a legal cause for removal under

the constitution of this State. A prima facie case at least is made by the petition. The order denying the writ will be reversed. It is so ordered.

All concur, except SHACKLEFORD, J.

SHACKLEFORD, J., dissenting.

B. H. Bridges filed an information in the nature of *quo warranto,* wherein he sought the issuance of a writ to A. M. Henry, requiring him to show by what warrant or authority he held the office of Assistant State Chemist, exercised the functions and received the emoluments thereof and to make answer to the allegations of the information, the informant claiming that he was rightfully and legally entitled to such office and reciting and alleging the facts upon which he based such claim. The cause coming on to be heard upon the application of the informant for such writ, a judgment was pronounced and rendered by the circuit court denying such application and refusing to issue the writ. The informant seeks to have this judgment reviewed here by writ of error.

Right at the outset we find ourselves confronted with the question as to whether or not the judgment so rendered is of such a nature as to support a writ of error, the defendant in error earnestly contending that it is not. We have repeatedly held that a writ of error will lie only to a final judgment, the only exception being to orders granting new trials. See section 1691 of the General Statutes of 1906 and the construction placed thereon in Mizell Live Stock Co. v. J. J. McCaskill Co., 57 Fla., 118, 49 South. Rep., 501, wherein prior decisions of this court will be found cited. As we held in the cited case under this statute, as at the common law, two prerequisites to the right of review by writ of error existed, there must

have been not only a finality of the cause in the inferior court but there must have entered into that judgment the element of involuntariness. Are such prerequisites to be found in the instant case? There can be no doubt as to element of involuntariness being present, and, tested by the rule laid down in Harrison v. Thurston, 11 Fla., 307, which has been approved and followed in subsequent decisions, I think that the element of finality must be said to be also present. It "is such a judgment as leaves nothing undetermined and pending in the court below." Having reached the conclusion announced, nothing more could have been done by the trial court. Still earlier decisions of this court to the same effect will be found referred to in the cited cases. Also see Jeffreys v. Coleman, 20 Fla., 536, Watkins v. Venable, 99 Va., 440, 39 S. E. Rep., 147, will be found to be very much in point.

Having determined this point, I am now called upon to decide whether or not the trial court erred in refusing the writ. I do not consider it necessary to set out the information or the five exhibits attached thereto and made a part thereof. Very briefly stated, it is alleged that the informant had been appointed and commissioned by the Governor, under chapter 5662 Laws of Florida of 1907, Assistant State Chemist, for the term of four years from the 2nd day of September, 1907; that on the 21st day of May, 1909, he was arrested, at the instance of the Governor, and presented before a special committee of the State Senate, which was then in session. Then follows a statement of the proceedings had before such committee, which we shall presently discuss, in so far as we deem the same necessary, after which it is alleged that the informant was removed from his office by the Governor, on the 25th day of May, 1909, the Senate then and for ten days thereafter being in session, and that on the 28th day of May, 1909, the respondent was appointed and commis-

sioned to fill the unexpired term of the informant. The informant contends that his removal from office was without warrant or authority of law, consequently such appointment of the respondent was illegal, basing such contention upon the matters and things contained in the information and the accompanying exhibits, and the informant seeks reinstatement in his office. It is further alleged that the informant had presented to the Attorney General "a sworn relation and petition for an information in the nature of quo warranto, which petition the said Attorney General has refused."

Section 15 of Article IV of the State Constitution, upon which the action of the Governor was based, is as follows: "All officers that shall have been appointed or elected, and that are not liable to impeachment, may be suspended from office by the governor for malfeasance, or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency, and the cause of suspension shall be communicated to the officer suspended and to the senate at its next session. And the governor, by and with the consent of the senate, may remove any officer, not liable to impeachment, for any cause above named. Every suspension shall continue until the adjournment of the next session of the senate, unless the officer suspended shall, upon the recommendation of the governor, be removed; but the governor may reinstate the officer so suspended upon satisfactory evidence that the charge or charges against him are untrue. If the senate shall refuse to remove, or fail to take action before its adjournment, the officer suspended shall resume the duties of the office. The governor shall have power to fill by appointment any office, the incumbent of which has been suspended. No officer suspended who shall under this section resume the duties of his office, shall suffer any loss of salary or other compensation in consequence of

such suspension. The suspension or removal herein authorized shall not relieve the officer from indictment for any misdemeanor in office."

It will be observed that the consent of the Senate is required in order to authorize the removal of an officer. by the governor. It is contended by the informant that this consent was not obtained. I am of the opinion that the information fails to so allege or show and that the inference to be drawn from the allegations therein, taken in connection with the attached exhibits, may well be otherwise. It is directly alleged that the informant was presented before a special committee of the Senate, when certain conduct of the respondent was inquired into, consequent upon which investigation the informant was removed from office. The only other allegation in the information upon this point is to the effect that "the informant has never been officially advised of the concurrence of the Senate" in his removal, and that "the journal of the said Senate contains no record of any such concurrence." This court has uniformly and repeatedly held that any pleading is to be most strongly construed against the pleader. We must presume that the informant has presented in his information the facts and circumstances upon which he relies as strongly and favorably as he could, exercising his privilege of selecting his own language in which to couch them. See Kirton v. Atlantic Coast Line R. Co., 57 Fla., 79, 49 South. Rep., 1024, and Capital City Bank v. Hilson, 59 Fla., 215, 51 South. Rep. 851. I readily concede the correctness of the contention of the informant that the power of removal is limited to the causes enumerated in the section of the constitution, which we have copied in full above, and that the Legislature could not make additions to those causes. The courts, as well as the Legislature and the Governor, are

equally bound by the constitution, as is also the inform-
ant. No one of us can add to its requirements. An exam-
ination of the section under consideration discloses that
neither directly nor by necessary implication does it pro-
vide for or require that an officer who has been removed
shall be "officially advised of the concurrence of the Sen-
ate" therein. Neither do we find wherein the constitution
requires that the journal of the Senate should contain a
"record of any such concurrence." The reasoning to be
found in the case of West v. State, 50 Fla., 154, 39 South.
Rep., 412, is alike applicable here and impels us to the
same conclusion as therein reached. Even if I had any
lingering doubt as to the attitude or action of the Senate
in the matter, it would have to be resolved against the
informant upon his own showing. Exhibit E, attached to
his information, bearing the caption, "Senate Chamber,
Tallahassee, Fla., May 31, 1909," addressed "To Whom It
May Concern," and signed "W. Hunt Harris, Chairman
Special Committee of Investigation," among other things,
contains the following: "The result of the conference was
reported to the Senate. The Governor, in an informal
way, asked the advice of the Senate relative to what action
should be taken regarding Mr. Bridges. The Senate in-
structed the chairman of the Committee on Official Ste-
nographers to discharge Mr. Algee and advised the Gov-
ernor in an informal way that it was the sense of the
Senate that Mr. Bridges should be removed from the office
of Assistant State Chemist. This action of the Senate
was based on the theory that it was highly improper,
although not criminal, for any attache of the Senate or
employee of the State Department, to be engaged in the
business of lobbying."

I think that this sufficiently shows "the consent of the
senate" to the removal of the informant from office by
the Governor.

I see no occasion to go into any extended discussion of the reasons or causes which led or influenced the Governor and Senate to the conclusion that the informant should be removed. It is sufficient to state that while a certain bill was pending before the Senate defining intoxicating liquors and beverages and fixing the maximum percentage of alcohol in non-intoxicating liquors and beverages, L. C. Algee, an official stenographer of the Senate, wrote a letter to a certain brewing company, wherein for a named monetary consideration he would use his influence to have such legislation enacted as would prove to the financial benefit of the business of such company; that this letter was brought to the attention of the Senate and a Special Committee appointed to investigate the matter; that Mr. Algee admitted writing such letter and stated that the information therein contained was furnished by the informant and that he and the informant "were to lobby against the bill of Senator Humphreys, which had been amended so as to read 'one-half of one per cent of alcohol,' instead of 'two per cent;' that they would attempt to have the bill amended to read 'two per cent,' which (from the letter) would have been a very advantageous condition for all those firms engaged in manufacturing near beers:" that the informant "was confronted with the letter and Mr. Algee, and admitted everything that Mr. Algee had related."

I have examined the authorities cited to us by the respective parties, but, after doing so, am of the opinion that, owing to the different verbiage of our State constitution, the decisions of other jurisdictions throw but little light upon the point with which we are called to deal. I have also carefully examined the two opinions rendered by this court in State ex rel. Attorney General v. Johnson, 30 Fla., 433, 499, 11 South. Rep. 845, 855, 18 L. R. A., 410, also cited to us by the respective counsel, but see no use

ful purpose to be accomplished by reviewing, repeating or discussing what was said therein. As we have repeatedly held, it is the duty of a party resorting to an appellate court to make the errors of which he complains clearly to appear, every presumption being in favor of the correctness of the rulings of the trial court. Falk v. Kimmerle, 57 Fla., 70, 49 South. Rep., 504. Upon the showing made, I am of the opinion that it has not been made to appear to us wherein the trial court committed any error in refusing the writ, therefore I think that the judgment should be affirmed.