The State of Florida, ex rel. L. M. Hatton, Jr., *Relator,* vs. Robert T. Joughin, *Respondent.*
138 So. 392.
En Banc.
Original Jurisdiction.
Opinion filed December 12, 1931.

*Dickenson & Lake* and *Waller & Pepper,* for Relator;
*Charles F. Blake, P. O. Knight, Sutton, Tillman & Reeves,* and *Pat Whitaker,* for Respondent.

PER CURIAM.—This proceeding in quo warranto was instituted by relator, L. M. Hatton, Jr., to test the right of respondent, Robert T. Joughin, to exercise the title, privileges, and franchises of the office of sheriff of Hillsborough County, Florida. The respondent in due course filed his return to the writ in which he denied any claim or right on the part of relator to hold or exercise title to said office and asserted that he was holding it by virtue of a lawful and valid commission issued to him by the Governor of the State of Florida. The cause now comes on to be heard on the demurrer of relator to respondent's return and his motion for judgment of ouster.

The writ and the return thereto disclose that L. M. Hatton, Jr., was duly elected sheriff of Hillsborough County at the general election held in November, 1928, that he · was commissioned by the Governor as such sheriff for the four-year term beginning in January, 1929, that on October 3, 1929, the Governor, by virtue of Section Fifteen of Article Four of the Constitution, promulgated his executive order suspending the said L. M. Hatton, Jr., from said office for misfeasance, malfeasance, neglect of duty, drunkenness, and incompetency in office, and that on October 5, 1929, the Governor appointed and commissioned the respondent, Robert T. Joughin as sheriff of Hillsborough County pending the suspension of L. M. Hatton, Jr.

The first question raised by the demurrer to the return is whether or not this Court is empowered to or will review the executive order of the Governor suspending the relator from the office of sheriff of Hillsborough County.

The executive order of the Governor was predicated on Section Fifteen of Article Four of the Constitution, the pertinent part of which is as follows:

"All officers that shall have been appointed or elected, and that are not liable to impeachment, may be suspended from office by the Governor for malfeasance, or misfeasance, or neglect of duty in office, for the commission of a felony, or for drunkenness or incompetency, and the cause of suspension shall be communicated to the officer suspended and to the Senate at its next session. And the Governor, by and with the consent of the Senate, may remove any officer not liable to impeachment, for any cause above named. Every suspension shall continue until the adjournment of the next session of the Senate, unless the officer suspended shall, upon the recommendation of the Governor, be removed; but the Governor may reinstate the officer so suspended upon satisfactory evidence that the charge or charges against him are untrue. If the Senate shall refuse to remove, or fail to take action before its adjournment, the officer suspended shall resume the duties of the office. The Governor shall have power to fill by appointment any

office, the incumbent of which has been suspended
. . . . . . . . . ."

The power vested in the Governor to suspend an officer under this section of the Constitution is executive. Owens vs. Bond, 83 Fla. 495, 91 So. 686. It is in no sense judicial or quasi judicial. It involves judgment and discretion on the part of the Governor, including the power to hear and decide, and while the rule seems well settled that so long as the Governor acts within his jurisdiction as charted by organic law, his action will not be reviewed by the Courts. State ex rel. Holland vs. Ledwith, 14 Fla. 220; State ex rel. Attorney General vs. Johnson, 30 Fla. 499, 11 So. 855; People ex rel. Johnson vs. Coffey, 237 Mich. 591, 213 N. W. Rep. 460; In re Guden, 171 N. Y. 529, 64 N. E. Rep. 451, 12 R. C. L. 1008, 1010. This general rule, however, is modified by the exception, that such exercise of power being that affecting the lawful rights of individuals, the jurisdictional facts, in other words the matters and things on which the executive grounds his cause of removal may be inquired into by the Courts. State ex rel. Attorney General vs. Johnson, 30 Fla. 433, 439, 11 So. 845; State ex rel. Bridges vs. Henry, 60 Fla. 246, 53 So. 742.

In Bridges vs. Henry, supra, this Court held that the jurisdictional facts on which a removal from office under Section Fifteen of Article Four of the Constitution was accomplished might be inquired into by quo warranto. In fact when the title to office is involved, quo warranto is the usual method of attack though a like result may be reached in some cases by mandamus, as in Attorney General vs. Johnson, supra, where the appointee proceeded against the suspended officer to require him to turn over the books and office equipment. Mandamus being a collateral attack on the title to office may be supported by liberal or general statements of causes for removal while quo warranto being a direct attack must be predicated on direct and positive statements of legal facts supporting the

cause of removal. The scope of the two proceedings being fraught with marked differences, decisions based on them should be considered in the light of these differences.

The second and third assignments of error present the question of whether or not, in his suspension from office, the relator was deprived of any right guaranteed him under Section Fifteen of Article Four of the Constitution.

One's right to office and the emoluments thereof is protected by the Fourteenth Amendment. Pennoyer vs. Neff, 95 U. S. 714, 24 L. Ed. 565. Relator's right to exercise and enjoy the office of sheriff of Hillsboro County is a species of property which the law will protect and will also redress if he is wrongly deprived of it, yet he must bear in mind that he, as well as every other officer appointed or elected in this State who is not subject to impeachment, accepts his appointment or election subject to suspension by the Governor for the causes enumerated in Section Fifteen of Article Four of the Constitution.

Under Section Fifteen of Article Four, Constitution of Florida, officers may be suspended from office by the Governor for malfeasance, misfeasance, neglect of duty in office, the commission of a felony, for drunkenness, or incompetency, and if the Senate advises and consents to such suspension at its next session the officer is removed. It therefore takes the joint action of the Governor and the Senate to remove an officer, the action of the Governor being limited to suspension. The power of removal being executive and in no sense judicial, the courts will not interfere with the executive or the Senate in the performance of this function. When, however, the function has been exercised as in this case, it by no means follows that the power of the Courts may not be invoked to determine which of two commissioned claimants has the legal right to exercise and enjoy the title to the office brought in question.

But, the relator contends that he was not given a hear-

ing and an opportunity to disprove the charges against him nor were the causes of his suspension communicated to him as contemplated by Section Fifteen of Article Four of the Constitution.

The record discloses that, prior to his suspension, the Governor summoned the relator before him and reviewed the charges against him, that the order of suspension was served on relator October 4, 1929, and transmitted to the Senate with supporting affidavits April 9, 1930, that a Committee was appointed from the Senate which considered the ground of such suspension, took testimony, heard relator in person, and by counsel in his defense, and furnished him a copy of all proceedings had before said committee, after which the committee made its report to the Senate which in executive session on April 28, 1930, advised and consented to the removal of relator from office.

We think this procedure on the part of the executive and the Senate met every requirement of the Constitution. The relator had no constitutional right to a notice and hearing of the charges against him prior to suspension. State ex rel. Attorney General vs. Johnson, 30 Fla. 433, 11 So. 845. The Governor may, after suspension, reinstate the officer suspended on satisfactory evidence that the charge or charges against him are untrue, but this fact, the Governor may determine in any way that may seem to him just and proper. This provision does not contemplate a second hearing and examination of the charges unless the Governor deems such course expedient nor does the constitution contemplate that the suspended officer either before or after suspension be given a trial as if he were in a court of justice. It appears that the cause of suspension was communicated to relator and to the Senate at its next session and that is all the Constitution requires. After a thorough examination of the grounds of suspension and after extending Relator the privilege of being heard in his

own behalf, the Senate advised and consented to the suspension. In this procedure we are unable to see that any constitutional right of the relator was infringed on.

It is next contended that the message of the Governor transmitting the order of suspension to the Senate was ineffectual and did not give the Senate jurisdiction of the cause for the reason that it did not in terms recommend the removal or reinstatement of the Relator.

The message of the Governor transmitting the order of suspension to the Senate was as follows:

"In pursuance of Section Fifteen of Article Four of the Constitution of the State of Florida, I have the honor to transmit herewith Official Copy of the Executive Order of Removal of L. M. Hatton, Jr., Sheriff of Hillsborough County, Florida, together with Affidavits supporting the same."

This contention is grounded on the following provision of Section Fifteen of Article Four as quoted elsewhere in this opinion; "Every suspension shall continue until the adjournment of the next session of the Senate, unless the officer suspended shall, upon the recommendation of the Governor, be removed."

Relator's contention is in substance, that the message of the Governor transmitting the order of suspension to the Senate must sound literally in the terms of the constitution else it is void and ineffectual. We do not so understand and interpret this provision of the constitution. It would place a "clamp and straight jacket" on the use and application of words contrary to every principle of good English usage. It would, to all practical purposes restrict the range of the vocabulary of Shakespeare and Milton and Woodrow Wilson to that of Poll Parrot. We are unwilling to thus shackle a language, one of whose greatest assets is its purity and richness in synonyms and phrases which vary slightly in meaning, but add largely to expression, yet this is what is done when we say that the Governor cannot, in compliance with the terms of the constitution,

recommend the removal of an officer without using the word ''recommend'' as a basis for his action. We could, with equal propriety say that one could not be nominated, employed, hired, or fired without employing a prescribed literal formula to do so.

Then if there is magic in a word, it will be observed that the quoted provision of the constitution uses the word ''recommendation'' instead of the word ''recommend''. If literal terms are to be followed, the Governor cannot say I ''recommend'' removal but he must say I ''recommendation'' removal. To recommend action means to advise or attract favor to it, to make acceptable, to commend to favorable notice, or to commit to another's care, confidence or acceptance with favorable representation. Any word or statement that does this is sufficient.

Now let us see what took place in the instant case. The relator was suspended by the Governor for causes stated in the constitution, he was not reinstated, the Senate was in its ''next session'', the Governor transmitted his order of suspension to the Senate as here quoted, ''In pursuance of Section fifteen of Article four of the Constitution of the State of Florida'', the senate at once proceeded to consider the order of suspension as transmitted to it and in due course advised and consented to it. This action on the part of the Senate completed the removal of the relator from office.

Section fifteen of Article four deals exclusively with suspensions and removals from office, the causes therefor and the appointment of successors to those suspended. The duty imposed on the Governor and the Senate is clearly defined therein. There could have been no reason whatever for transmitting the order of suspension to the Senate ''in pursuance of Section fifteen of Article Four'' except to have the Senate advise and consent to it. The very purpose of transmitting the order to the Senate is to notify it that the Governor has performed the constitutional duty

laid on him and to recommend its approval thereof. If the Senate approves the suspended officer is eo instanti removed and the matter is closed but if it refuses to approve or take action on the suspension, the suspended officer at once resumes the duties of his office. The bare fact of transmitting the order of suspension to the Senate ''in pursuance of section fifteen of Article four'' invests it with a recommendation for removal as it could be thus clothed and transmitted for no other purpose. The Senate being advised of its constitutional duty placed that interpretation on the order of suspension and set about promptly to execute the duty imposed on it.

There is nothing in this view in conflict with advisory opinion to the Governor, 69 Fla. 508, 68 So. 450, on which relator relies to support his contention. In that case, the primary question this court was concerned with was the manner of handling a suspension or removal of an officer, the cause of which arose during the session of the Senate. The Governor was, in effect, advised that under such circumstances he could not suspend, that his power to suspend existed only between the sessions of the Senate and that during a session of the Senate if a cause of suspension was brought to his attention, he should recommend to the Senate permanent removal of the officer. In either event no set formula is required but any statement appraising the Senate of the Governor's action and suggesting its approval or concurrence therein is sufficient. The message of the Governor transmitting the order of removal to the Senate in this case met every constitutional requirement.

Reaching this conclusion, it becomes unnecessary to discuss other assignments. The demurrer to the return is accordingly overruled and the motion for judgment of ouster is denied.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL AND DAVIS, J.J., concur.

BROWN, J., dissents.

BUFORD, C.J., (Concurring specially) : I have carefully considered the majority opinion and also the dissenting opinion of Mr. Justice Brown, together with the authorities cited in each of the opinions, and I find that I must concur in the majority opinion, and especially for the following reasons:

Section 15 of Article IV of the Constitution provides in part:

"And the Governor by and with the consent of the Senate may remove any officer not liable to impeachment for any cause above named."

This provision is set off in a separate sentence in this section of the Constitution. The report by the Governor to the Senate of a suspension under the provisions of this Article of the Constitution can be but for one purpose and that is to acquire the advice and consent of the Senate to the removal of a suspended officer. The Governor, having suspended an officer, may pursue either one of three courses. He may reinstate the officer or he may withhold any recommendation or advice in regard to the suspension from the Senate and allow the Senate to adjourn without taking action on his suspension, which would result in the automatic reinstatement of the officer suspended, or he may report the suspension under the provisions of the article of the Constitution above named to the Senate for its action.

In this case the record shows that the Governor transmitted the record of the suspension to the Senate pursuant to the provisions of section 15, Article IV, of the Constitution. The Senate, having received the communication from the Governor, as is stated in the majority opinion, held a hearing and allowed the Relator here to produce witnesses and testify himself in controversion of the charges. The Relator appeared before the committee by himself and counsel and offered testimony in his behalf. Evidently it was then conceded by the Governor,

the Senate and the Respondent that the Senate had juris-
diction of the matter for the purpose of determining its
recommendation to the Governor. After the hearing the
Senate Journal shows that on April 28th the following
proceedings were had:

"The Senate in executive session on April 28th, 1931,
advised and consented to the removal from office by
the Governor of L. M. Hatton, Jr., former Sheriff in
and for Hillsborough County, Florida."

Thereafter, the Governor filled the vacancy caused by
the removal by appointing and commissioning the Respon-
dent to be Sheriff of Hillsborough County until his suc-
cessor should qualify.. This action shows conclusively that
it was the construction of the Governor that his commun-
ication to the senate in this regard complied with section
15 of Article IV of the Constitution and that the Senate,
accepting that communication as such compliance, advised
and consented to the removal; that thereupon the office
became vacant and the Governor proceeded to fill such
vacancy by the appointment of the Respondent.

When the Governor communicates suspension with the
charges upon which the suspension is based to the Senate
specifically stating that the same is transmitted to the
Senate "in pursuance to the provisions of section 15 of
Article IV of the Constitution of Florida" he makes the
provisions of that section a part of his communication of
transmission and, under the provisions of that section,
such transmission can only be for the purpose of recom-
mending to the Senate the removal of the suspended
officer. Had the Governor's communication not stated that
the record was transmitted to the Senate "in pursuance
of section 15 of Article IV of the Constitution of the State
of Florida" it may be that the provisions of that article
of the Constitution would not be construed as constituting
a part of his communication and a more serious question

would be presented as to whether or not the Senate had jurisdiction to act.

For the reasons stated, I concur in the majority opinion.

BROWN, J., (Dissenting): It is quite plain that, under Section 15 of Article IV of the constitution, in order for the Senate to acquire jurisdiction to concur in the removal of an officer, the Governor must first recommend to the Senate such removal. Of course, the Governor, if it is his intention to secure the Senate's consent to the removal of an officer, is not required to use the exact word used in the constitutional provision, but he should use a word or words of similar import. This is too important a matter to be left open to mere conjecture. It is true, as stated in the majority opinion, the richness and variety of the English language is such that the same meaning may be expressed in different words. Thus the Governor need not be required to say in his communication to the Senate that "it is my recommendation," or "I recommend" that the suspended officer be removed. Perhaps it would be sufficient to say that 'I advise" or "I request" or to use any language which fairly and reasonably amounts to a recommendation to the Senate that they consent to or concur in the removal of the officer. It is not, however, sufficient to merely say that, as was done in this case: "In pursuance of section fifteen of Article IV of the Constitution of the State of Florida, I have the honor to transmit herewith Official copy of the Executive Order of Removal of L. M. Hatton, Jr., Sheriff of Hillsborough County, Florida, together with affidavits supporting the same." (It might be quoted, parenthetically, that the words "order of removal" of course referred to and meant "order of suspension," as, up to that time, no order of removal had been, or could have been, made, and the order accompanying the communication was merely the order of suspension.) Obviously, to say, "I * * * * * * transmit herewith * * * * * * * * copy of order" etc., is not at all synonymous in meaning

with "I recommend the removal of". Nor is the ambiguity or insufficiency of the language used removed by construing it in connection with the introductory phraseology, "In pursuance of section fifteen of Article four of the constitution of the State of Florida, I have the honor to transmit herewith," etc., because the language thus used in the Governor's communication is entirely consistent with and appropriate to the discharge of the duty imposed upon the Chief Executive by the first sentence of the constitutional provision, which gives the Governor the power to suspend officers for certain causes, and requires that "the cause of suspension shall be communicated to the officer suspended and to the Senate at its next session." The Governor's communication to the Senate complied with this requirement, and hence it was made "In pursuance of section 15 of Article IV of the constitution." But, in order to invoke, and authorize the exercise of, the potential jurisdiction of the Senate to take such action by that body as, under the constitution, is essential to the removal of the suspended officer from the office in question, the constitution requires that the Governor must go further than merely communicate or transmit a copy of the order of suspension, together with the affidavits supporting the same, to the Senate; for, by the very clear and easily understood language of the Constitutional provision, the Senate cannot take any effective action for removal except "upon recommendation of the Governor." Without such recommendation, the Senate cannot acquire jurisdiction of the subject matter of removal, and any such action would be void. Nor can the suspended officer confer such jurisdiction upon the Senate by personally appearing before the Senate or one of its committees and defending himself against the charges made. It is elementary law that jurisdiction of the subject matter cannot be conferred by consent of parties. Lovett v. Lovett, 93 Fla. 611, 112 So. 768.

To my mind, the clearest and most logical and accurate

interpretation of this section 15 of Art. IV of the constitution, to be found in all the former records of this court, is that contained in the Advisory Opinion to the Governor, filed April 22, 1915, and reported in 69 Fla. 508, 68 So. 450, and I think it fully supports the views which I have expressed. This Advisory Opinion was concurred in by all the members of this Court, and it reads in part as follows:

"It must be observed that the words "suspension" and "removal" are both used in this section, and that the penalties, i. e. suspension from office or removal from office, are imposed for identically the same acts of commission or omission on the part of the official, in other words the acts of commission or omission on the part of the official that will justify his suspension from office will also justify his permanent removal from the same office. The true intention of this provision in the organic law is that the Governor has no power to permanently remove an officer from his office unless it be done by and with the consent and concurrence of the Senate. The constitution makers, taking cognizance of the fact that an official not subject to impeachment, might, during the time when the Senate was not in session, be guilty of some act of commission or omission that would justify his removal from office, in order to preserve to the Senate the power delegated to it to concur in such removal before it became permanently effectual, delegated to the Governor the power, during such recess of the Senate, not to remove, but simply to suspend such officer, enjoining upon him the duty of reporting such suspension with the cause thereof to the Senate at its next session thereafter. If the Governor at the time of his report of such suspension to the Senate at its next session, or at any time during such next session of the Senate, shall recommend to the Senate the removal of such suspended officer, and such Senate consents thereto and concurs with the Governor in such recommendation for removal, the officer becomes *eo instanti* permanently removed, but if such Senate affirmatively refuses to consent to the removal recommended by the Governor, then such previous suspension from office expires and comes to an end *eo instanti* upon the affirmative refusal of the Senate to consent to or concur

in the removal recommended. But if the Senate to whom such suspension and recommendation for removal has been reported simply fails to take affirmative action thereon, and so failing adjourns, then upon such adjournment of the Senate such previously made suspension *eo instanti* comes to an end, and the suspended officer at once resumes his office.''

''As it requires the joint action of both the Governor and the Senate to effect a permanent removal of an officer from his office, if the Governor does not recommend to the Senate the removal of such officer, then such previous suspension likewise terminated with the adjournment of such session of the Senate held next subsequently to such suspension.'' * * * *

''It must be observed also that the section under discussion makes no provision for any action by the Senate whatsoever upon a report or communication by the Governor of a simple suspension of an officer without any recommendation for removal.''

While the Chief Executive and the legislative department are vested with great power and authority, the fact remains that the members of all departments of the State government are bound by the mandates of the constitution as much so as the private citizen. In the case of State v. Chase, 91 Fla. 413, 107 So. 541, decided by this court in 1926, the Governor's warrant of extradition was, by reason of the omission of certain material words required by law, held defective and invalid and the prisoner ordered discharged. In that case, it was said:

''We notice that it has been contended in some of the cases in the books that, on account of the high office held by the chief executive of a state, the validity of his warrant of arrest in extradition cases should not be closely questioned upon hearings before the courts on writs of this kind. No such contention is made in this case. Counsel representing both the state and the defendant concede that this is a government of laws and not of men, and that even an instrument of such dignity as an executive warrant is open to full inquiry as to its legal sufficiency upon the hearing on the ancient writ

of habeas corpus at the suit of the humblest of individuals.''

It is a well settled rule of constitutional construction in this State that where the constitution expressly provides the manner in which a thing shall be done, it impliedly prohibits any other manner of doing it. So where, as here, the constitution provides that an officer (not of the class subject to impeachment proceedings) may be removed by the Senate ''upon the recommendation of the Governor'', such officer cannot lawfully be removed by the Senate without such *recommendation* by the Governor. No set form of words is required, but whatever language the Governor may see fit to use in his communication to the Senate, it must, in order to comply with the constitution, when fairly and reasonably interpreted, amount to a recommendation of removal. This is vital, and jurisdictional, and absolutely essential before the Senate can take any effective actions for removal. In the instant case, to my mind, the Governor's communication, even when liberally construed, does not contain any recommendation for removal from office, thus rendering the Senate's action nugatory. Holding these views, I cannot do otherwise than dissent.