PER CURIAM.
SUPREME COURT OF FLORIDA Tallahassee March 16, 1967
Honorable Claude Kirk Governor of Florida State Capitol Tallahassee, Florida
Dear Sir:
We have your letter of March 9, 1967, which, omitting formal parts, reads as follows :
“According to the provisions of Section 15, Article 4, Florida Constitution, the Governor is authorized to request a written opinion of the Justices of the Supreme Court as to the interpretation of any portion of the State Constitution upon any question affecting the executive powers and duties.
“Under Section 15 of Article 4, Florida Constitution, it is provided in part that
“ ‘All officers that shall have been appointed or elected and that are not *738 liable to impeachment, may be suspended from office by the Governor, for malfeasance, or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompe.tency, and the cause of suspension shall be communicated to the officer suspended and to the Senate at its next session.’
“Pursuant to my Executive Order of February 27, 1967, a copy of which is enclosed, a State Attorney was assigned to another circuit for the purpose of conducting an investigation into the alleged misuse of public property and funds.
“Acting pursuant to said Executive Order, the State Attorney served members of the Board of County Commissioners with a witness subpoena to testify before him on March 4, 1967 concerning the alleged misuse of public property and funds. I was officially advised by the State Attorney that the Board of County Commissioners declined to testify and invoked certain provisions of the Florida and United States Constitutions relating to self-incrimination.
“On March 7, as Chief Executive of the state, I requested the said members of the Board of County Commissioners to reconsider their decision urging their full cooperation with the State Attorney in conducting said investigation. The County Commissioners, nevertheless, refused to cooperate by declining again to testify before the State Attorney.
“It has been my understanding that public officials have a continuing, intrinsic duty and obligation to cooperate with other public officials, whether requested to do so by subpoena or by the Chief Executive of the state.
“Since public officials occupy a position of public trust and confidence and respect, their actions must be above reproach and beyond question. It is my feeling that the failure of the members of the Board of County Commissioners to testify, pursuant to subpoena and pursuant to my request as to matters that occurred in their official capacity reflects an unwillingness to cooperate and denotes a breach of public trust and evidences malfeasance, neglect of duty in office and incompetency.
“While I recognize that persons may exercise constitutional privileges such as the privilege against self-incrimination, persons do not have a constitutional right to hold public office; accordingly it would appear that a public official is not entitled to be continued in the public service where the exercise of his constitutional privilege is inconsistent with the performance of his duties.
“However, I am in doubt as to my powers and duties as Governor under Article 4, Section IS and therefore have the honor to request your written opinion on the following questions:
“Do I have the executive power under Section 15 of Article 4 of the Florida Constitution to suspend an officer for failure to cooperate with other public officials as reflected by a failure to testify before a State Attorney pursuant to subpoena and pursuant to my request? In view of the foregoing situation and recitements have sufficient jurisdictional facts been set forth to support an Executive Order of Suspension grounded upon malfeasance, neglect of duty in office and incompetency as contained in Section 15, Article 4, of the Florida Constitution ?”
In view of recognized limitations on the scope of advisory opinions under Section 13, Article IV, Florida Constitution, F.S.A., the first question may be answered only in terms of Section 15, Article IV, itself. The initial determination of the existence of facts sufficient to activate executive action under Section 15, Article IV, supra, is solely an executive function. The power must be initially exercised by the Chief Executive without judicial participation — either solicited or unsolicited. Once the executive decision is made and the power'of suspension is exercised, then the allegations of jurisdictional facts suf *739 ficient to support the suspension order may properly become the subject of judicial inquiry in an appropriate adversary proceeding. The sufficiency of the evidence to support the executive determination even then remains a matter subject to senatorial action. State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 92 A.L.R. 988; State ex rel. Hardee v. Allen, 126 Fla. 878, 172 So. 222. In this connection also see State ex rel. Hatton v. Joughin, 103 Fla. 877, 138 So. 392.
The second inquiry in effect requests advice regarding the impact of a proposed order of suspension and the sufficiency of an announced set of jurisdictional facts. The question does not merely invite a definition of the limits of purely executive power. An answer must affect directly the rights of individuals against whom it is contemplated the power will be exercised. In re Opinion of Supreme Court, 39 Fla. 397, 22 So. 681. These individuals are not parties to this non-adversary proceeding. An opinion without their participation would deny to them a traditional aspect of due process—the right to be heard.
In view of the ex parte nature of an advisory opinion, it is our view that any expression on either of your questions, in the current context, would be premature and improper. The review of jurisdictional facts in such situations has, consistently, been accomplished in an adversary proceeding instituted for the purpose, following, but not preceding, the entry of the executive suspension order.
“ * * * The power of removal being executive and in no sense judicial, the courts will not interfere with the executive or the Senate in the performance of this function. When, however, the function has been exercised * * *, it by no means follows that the power of the courts may not be invoked to determine which of two commissioned claimants has the legal right to exercise and enjoy the title to the office brought in question.” State ex rel. Hatton v. Joughin, 103 Fla. 877, 138 So. 392.
Moreover, out of profound concern for the preservation of the concept of separation of powers, we are impelled to the view that any preliminary judicial scrutiny of the jurisdictional facts upon which a governor proposed to ground an order of suspension, would be an assumption of power neither contemplated nor authorized by the Constitution. Implicit in the requested exercise of judicial power to approve your executive order before it is entered, would also be the unsolicited exercise of power to disapprove it. Such a premature intrusion on the executive function, invited or uninvited, would be inconsistent with the independence of the executive branch of government. The Courts can take no action in regard to this subject matter until you, as the Chief Executive, first act independently.
Respectfully,
CAMPBELL THORNAL Chief Justice ELWYN THOMAS B. K. ROBERTS E. HARRIS DREW STEPHEN C. O’CONNELL Justices
THORNAL, C. J„ and THOMAS, ROBERTS, DREW and O’CONNELL, JJ-, concur.
CALDWELL and ERVIN, JJ., dissent with Opinions.