PER CURIAM.
We here consider a relator’s petition for writs of quo warranto and mandamus and other extraordinary constitutional relief. Arguments have been heard on the petition and Respondents have moved that the petition be dismissed.
It appears that Relator, Murray S. Mey-erson, served as Constable in District 5, Dade County, Florida. On September 28, 1971 the Dade County Grand Jury indicted him, charging grand larceny, conspiracy to commit grand larceny, and compounding a felony. On Meyerson’s request, the Governor of Florida suspended him from the office of constable due to the grand jury indictment by an executive order dated October 4, 1971, which order was amended by a subsequent Executive Order dated February 15, 1972.
*672 Respondent James D. Levenson was commissioned by the Governor to serve as Constable of District S, Dade County, during Relator’s suspension.
Pursuant to Section 7(b), Article IV, Florida Constitution, F.S.A., and Sections 112.40, et seq., Florida Statutes, F.S.A., the suspension orders of Relator were transmitted to the State Senate on February 16, 1972 which referred them to its Select Committee on Executive Suspensions for hearing and recommendation.
The Select Committee reported to the State Senate on March 29, 1972 its findings and recommendations as follow:
“Senator Karl, Chairman of the Select Committee on Executive Suspensions, read the following report:
“Honorable Jerry Thomas March 29, 1972
President
The Florida Senate
The Capitol
Dear Mr. President:
“In the October term, 1971, Murray S. Meyerson was serving as the elected Constable, District 5, Dade County, Florida. During that term he was indicted by the Grand Jury in Dade County, and information was made by the State Attorney of the Eleventh Judicial Circuit, charging him with: conspiracy to commit grand larceny, grand larceny and compounding a felony. These charges grew out of the following circumstances which are essentially uncon-troverted :
“Richard Poelns was apprehended while allegedly using a credit card which had been taken from its rightful owner. He was before the Justice of the Peace Court of District 5 in February, 1971, and was bound over for trial on the criminal charge. His father, William Poelns, knew Mr. Meyer-son and Mr. Meyerson, as Constable, had assisted the Poelns family in the resolution of a prior charge against Richard Poelns for passing worthless bank checks to Food Fair in the amount of approximately $250.-00. In that matter, Mr. Meyerson had helped arrange restitution by the Polens’ to Food Fair.
“While in the. JP court, William Poelns, surprised that his son had been bound over for trial, encountered Mr. Meyerson, whose offices were adjacent to the JP’s office and court, and asked him if he could help his son in the credit card matter. Mr. Meyerson thereupon spoke to Mr. Sumner Spellman, an investigator for the credit card company, who was in the office at the time. He returned to Mr. Poelns and stated that something could apparently be done to rectify the situation if Mr. Poelns could come up with $400.00 or $500.00. Mr. Meyerson, who also has a private law practice, said he could not represent Mr. Poelns as his son’s lawyer but referred him to Mr. Arthur Massey who was furnished office space by Mr. Meyerson’s firm. Mr. Poelns engaged Mr. Massey to represent his son and during the ensuing months the Poelns’ [sic] saw Mr. Massey and Mr. Meyerson separately on several occasions.
“Richard Poelns’ trial was set for the 16th of September, 1971. On the day before that trial Mr. Poelns went to the State Attorney’s Office in Miami. As a result of that visit, the State furnished Mr. Poelns with $1,000.00 in identifiable currency, which William Poelns handed over to Mr. Meyerson at his Constable’s office, whereupon Mr. Meyerson was arrested.
“On October 4, 1971, Mr. Meyerson was suspended by Governor Askew on constitutional grounds of malfeasance, misfeasance, neglect of duty or the commission of a felony. (This order was amended on February 15, 1972, adding to the original charges on which the suspension was based, new charges of conspiracy to obstruct justice and the obstruction of justice.)
“On December 17, 1971, in the Criminal Court of Record in Dade County, Florida, Mr. Meyerson was acquitted of all criminal charges.
*673 “A pre-hearing conference was held before this committee on February 10, 1972, in the Governor’s Conference Room in Tallahassee, Florida, and final hearing was held on February 23, 1972, in Senate Room 31, Capitol Building, Tallahassee, Florida.
“The essential question before this Committee was the fitness for office of a public official who has been acquitted of criminal charges in court. The question is not whether Mr. Meyerson committed any criminal act or used the power of his office corruptly. The question is whether his conduct in the Poelns matter constituted incompetence or neglect of his duty as a public officer to such an extent that he should now be deprived of that office.
“Public officials are charged with a higher degree of propriety than ordinary citizens because they have been given great public trust and the betrayal of that trust constitutes a serious offense against the people.
“The facts of this case were not in serious dispute. The interpretations of those facts and the motives and intent of Mr. Meyer-son were very much in dispute. It is the position of the Governor that Mr. Meyer-son, on being approached by Mr. Poelns, agreed to ‘fix’ the charge against Mr. Poeln’s [sic] son for the sum of $500.00 or $1,000.00.
“Quite to the contrary, Mr. Meyerson’s position is that he, as a friend of Mr. Poelns, simply agreed to act as an intermediary between the Poelns family and the credit card company to arrange restitution (in the sum of approximately $500.00) and to collect for his friend, Mr. Arthur Massey, a portion of his legal fee (another $500.-00).
“In consideration of the evidence, consisting of a transcript of monitored telephone calls, a tape recording, a transcript of testimony adduced in the criminal trial court and the testimony heard by this Committee, the Committee concludes that, while there is an obvious and direct conflict as to the meaning of the actions of the parties, the conduct of Mr. Meyerson in the circumstances was inconsistent with his contention that he was acting as a friendly, disinterested intermediary to arrange restitution and to collect a legal fee.
“Mr. Meyerson must be held to a high standard of conduct. The fact that, in part, the negotiations were carried on in and around the Constable’s office lends credence to a belief and understanding that Mr. Meyerson used his influence as a public officer to affect the outcome of the trial of criminal charges against Richard Poelns though there is little evidence that Mr. Meyerson could have actually affected those proceedings. It is the accoutrements of office, the atmosphere of officialdom which we believe were used to attempt to affect (or to appear to affect) a matter before the courts. Mr. Meyerson was not only a lawyer and a Constable, he was an officer of the courts of this State. He knew that Mr. Poelns was represented by counsel and that his counsel was the appropriate agent for arranging restitution if such arrangements could be made and were desirable to the conduct of the defense in the criminal charge against Richard Poelns.
“It is therefore the recommendation of this Committee that the suspension order of the Governor be upheld and that Murray S. Meyerson be removed as Constable, District 5, Dade County, Florida.
“Respectfully submitted,
“Frederick B. Karl, Chairman
C. W. Beaufort
Gerald A Lewis
T. Truett Ott
Kenneth Plante
C. S. Reuter
Harold S. Wilson.”
The Senate by a vote of 26 to 21 adopted the report (see Journal of the Senate for April 6, 1972, at page 822), and Relator thereupon stood removed from the office of constable.
*674 Relator contends in his petition that the Senate exceeded its constitutional authority in purporting to remove Relator in that it did not find him in violation of any of the charges or grounds for suspension contained in the Executive Orders, but went outside them and found that Relator’s conduct in the “Poelns matter constituted incompetence or neglect of duty as a public officer.”
Reference to the amended Executive Order of February 15, 1972 reflects the following specific grounds for suspension:
“WHEREAS, Murray S. Meyerson is presently serving as Constable, District 5, Dade County, Florida, and
“WHEREAS, an investigation was made concerning complaints received from citizens of Dade County, Florida, relating to the conduct of Murray S. Meyerson, and
“WHEREAS, on the 28th day of September, 1971, the Dade County Grand Jury indicted Murray S. Meyerson on certain criminal charges, to-wit: Grand Larceny, Conspiracy to Commit Grand Larceny, and Compounding a Felony, and
“WHEREAS, on the 16th day of September, 1971, Murray S. Meyerson made a request by telephone call to the Office of the Governor that he (Murray S. Meyerson) be forthwith suspended from his public office, and
“WHEREAS, based upon the investigation conducted by the Office of the Governor and in view of the request made by Murray S. Meyerson, I find that it is in the best interest of the citizens of the State of Florida that Murray S. Meyerson be immediately suspended from the Office which he now holds;
“NOW, THEREFORE, I, REUBIN O’D. ASKEW, Governor of the State of Florida, pursuant to the Constitution and laws of the State of Florida, do hereby find, determine and, for the purpose of Section 112.41, Florida Statutes, allege and specify:
“A. That Murray S. Meyerson is, and at all times material hereto, was a ‘county officer’ within the meaning of Section 7, Article IV, Florida Constitution of 1968, to-wit: Constable, District 5, Dade County, Florida.
“B. That beginning on the 14th day of January, 1971, and continuing until the 17th day of September, 1971, in Dade County, Florida, Murray Meyerson and Sumner Spellman did agree, conspire and combine or confederate to commit grand larceny, and in that the said Murray Mey-erson and Sumner Spellman did unlawfully and feloniously take, steal and carry away from the lawful possession of William Poelns certain property, to-wit: One Thousand Dollars ($1,000.00), good and lawful money of the United States of America, in violation of Section 833.04, Florida Statutes.
“C. That beginning on the 14th day of January, 1971, and continuing until the 17th day of September, 1971, in Dade County, Florida, Murray Meyerson and Sumner Spellman did unlawfully and felo-niously take, steal and carry away from the lawful possession of William Poelns certain personal property, to-wit: One Thousand Dollars ($1,000.00) good and lawful money of the United States of America, with intent to appropriate the said property to their own use in violation of Section 811.021, Florida Statutes.
“D. That beginning on the 14th day of January, 1971, and continuing until on or about the 17th day of September, 1971, in Dade County, Florida, Murray Meyerson and Sumner Spellman did conspire for pecuniary gain to commit the offense of obstruction of justice in that on the dates and at the places hereinabove alleged, while knowing that a criminal proceeding, to-wit: State of Florida vs. ' Richard *675 Poelns, Case No. 71-843, Criminal Court of Record of Dade County, Florida, was pending or about to be instituted, did agree, conspire and combine or confederate to endeavor or attempt to induce or otherwise cause a witness in said proceeding to-wit: Sumner Spellman, to testify or inform falsely or to withhold any testimony (either his own or that of another), information, document or thing.
“E. That beginning on the 14th day of January, 1971, and continuing on or about the 17th day of September, 1971, in Dade County, Florida, Murray Meyerson did attempt to commit the crime of obstruction of justice and in the course of such attempt, did induce or procure or attempt to induce or procure another, to-wit: Sumner Spellman, to obstruct justice by the said Sumner Spellman’s withholding or secreting or altering evidence or testimony or by procuring or inducing the said Sumner Spellman to cause or attempt to cause some other person or persons having knowledge material and relevant to matters then pending in the criminal court of record in and for Dade County, Florida, to avoid, refrain from or omit giving testimony in respect thereof, in exchange for some valuable consideration to be paid to the said Sumner Spellman by the said Murray Meyerson.
“F. That the aforesaid facts constitute the ‘offenses’ of malfeasance, misfeasance, neglect of duty or commission of a felony as used in Section 7(a) of Article IV, Florida Constitution.
“G. That in the interests of the citizens of Dade County, Florida and the State of Florida can best be served by the immediate suspension of Murray S. Meyerson as Constable, District S, Dade County, Florida.
“BEING FULLY ADVISED in the premises and in accordance with the Constitution and laws of the State of Florida, the following Executive Order is hereby promulgated, effective at 5 o’clock p. m. on October 4, 1971.
“1. That Murray S. Meyerson be, and he is hereby suspended, as and from the public office which he now holds, to-wit: Constable, District 5, Dade County, Florida.
“2. That Murray S. Meyerson be, and he is hereby prohibited from performing any official act, duty or function of any public office, from receiving any pay or allowances, and from being entitled to any of the emoluments or privileges of public office during the period of this suspension, which period shall be from the effective date of this order until further Executive Order or as provided by law.
“3. That Executive Order of the Governor No. 71-47 dated October 4, 1971, is superseded by this amended order.”
We note from the Journal report of the Senate Committee it did not find: that Relator conspired with Sumner Spellman to unlawfully take or that he took $1,000 from William Poelns; or that Relator conspired with Spellman to obstruct justice in the criminal case involving Richard Poelns or to induce Sumner Spellman to testify falsely or withhold information in the Richard Poelns criminal case or secrete or alter evidence in that case.
These were criminal charges quite specific in terms pinpointing the executive allegations against Relator.
We feel constrained to agree with Relator that the Senate is bound to restrict its findings to the specific executive charges in the suspension order and cannot depart therefrom. Either Relator was guilty of some of the criminal charges therein or he was not. While we agree with the general conclusions of the Senate relative to the high standards of conduct required of public officials, nevertheless in this matter the “offenses” of malfeasance, *676 misfeasance, neglect of duty, or commission of a felony charged against Relator by the Governor were directly tied to and based upon specific criminal acts and the Senate Committee did not find that Relator committed any of the criminal acts so charged. Since the executive suspension order did not charge misconduct on the part of Relator in the general terms indicated by the Senate, but based the suspension upon specific criminal acts, the Senate was not at liberty under principles of due process to make extraneous findings in keeping with its version of what the charges could have been in the light of general standards of required official conduct. While the Senate was not bound to accept the acquittal of Relator in the Criminal Court of Record of Dade County of the charges in the indictment, it did not find Relator was guilty of any of the same charges that also were the gravamen of the Executive Suspension Order.
The Senate Committee misconceived the issue laid before it by the executive suspension order when it stated:
“The essential question before this Committee was the fitjiess for office of a public official who has been acquitted of criminal charges in court. The question is not whether Mr. Meyerson committed any criminal act or used the power of his office corruptly. The question is whether his conduct in the Poelns matter constituted incompetence or neglect of his duty as a public officer to such an extent that he should now be deprived of that office.”
The due process issue before the Senate was whether Relator committed any of the specific acts charged. This is not to say that different allegations in the suspension order would not have supported the finding made by the Senate Committee, but as noted, the Senate was limited by principles of due process in its findings to the specific criminal acts charged in the Executive Suspension Order. The Senate Committee’s report reflects that it considered the Relator’s conduct constituted incompetence or neglect of duty not because of the commission of any of the criminal offenses specially charged against him, but because his conduct “in the circumstances was inconsistent with his contention that he was acting as a friendly disinterested intermediary to arrange restitution and to collect a fee.” Further that “the negotiations carried on in and around the constable’s office lends credence to a belief and understanding that Mr. Meyerson used his influence as a public officer to affect the outcome of the trial of criminal charges against Richard Poelns . . .” The Senate Committee concluded by saying:
“. . . It is the accoutrements of office, the atmosphere of officialdom which we believe were used to attempt to affect (or to appear to affect) a matter before the courts. Mr. Meyerson was not only a lawyer and a Constable, he was an officer of the courts of this State. He knew that Mr. Poelns was represented by counsel and that his counsel was the appropriate agent for arranging restitution if such arrangements could be made and were desirable to the conduct of the defense in the criminal charge against Richard Poelns.”
However, none of these factual considerations which the Senate extrapolated into its findings as constituting incompetence and neglect of duty were contained in the specific charges of the Executive Suspension Order. It might well be that it would constitute official neglect of duty and incompetence for a public officer who is a lawyer to become involved in a conflict of interest situation by assuming the role of attorney contrary to his official duties, but such is not charged in the Executive Suspension Order. By analogy to the criminal law such conflict of interest could not be considered a lesser included offense to those specifically charged in the suspension order. Failing so to charge and affording prior notice thereof is a clear violation of due process.
*677 In State ex rel. Kelly v. Sullivan, Fla.1951, 52 So.2d 422, this Court said:
“A suspension order is an indictment of the officer suspended and the Senate examines and tries it with a view of arriving at the truth of the charge. The Governor is in no sense on trial but the charge he brings against the suspended officer is the issue that the Senate tries.
We agree with the view of Justice Brown in his dissenting opinion in State ex rel. Hatton v. Joughin, 1931, 103 Fla. 877, 138 So. 392, that
“. . . [T]he Senate cannot take any effective action for removal except ‘upon recommendation of the Governor.’ Without such recommendation, the Senate cannot acquire jurisdiction of the subject-matter of removal, and any such action would be void.” (P. 398.)
These views of Justice Brown were not at variance with the majority opinion in that case.
Section 7(b) of Article IV of the Florida Constitution provides the Senate may, in proceedings prescribed by law, remove from office or reinstate the suspended official.
F.S. Section 112.41, F.S.A. provides that an order of suspension shall “specify facts sufficient to advise both the officer and the senate as to the charges made or the basis of the suspension.”
F.S. Section 112.47, F.S.A. provides for a “due process” hearing before the Senate Select Committee.
The foregoing considered, it is directed that appropriate relief in quo warranto be afforded Relator and that the Clerk of this Court prepare appropriate order in conformity herewith. It is so ordered.
ROBERTS, C. J., and ERVIN, CARLTON, McCAIN and DEKLE, JJ., concur.