STATE, *ex rel.* C. JAY HARDEE, v. LeRoy ALLEN.

172 So. 222.

Opinion Filed January 19, 1937.

Rehearing Denied February 12, 1937.

*James M. Carson, H. H. Wells* and *B. K. Roberts,* for Relator;

*John B. Sutton, G. L. Reeves, K. I. McKay, Chester H. Ferguson, Harold C. Farnsworth, Cody Fowler, T. M. Shackleford, Jr.,* and *R. C. Brown,* for Respondent.

Per Curiam.—The relator, C. Jay Hardee, filed an information in quo warranto in this Court challenging the right of LeRoy Allen to hold the office of solicitor of the Criminal Court of Record of Hillsborough County. Alternative writ was issued to which a demurrer and motion to quash have been entered and the cause now comes on for disposition on the issue so made.

It is agreed that C. Jay Hardee was appointed solicitor of the Criminal Court of Record for Hillsborough County, April 1, 1934, pending the suspension of Morris M. Givens, that at its 1935 session the said suspension of Morris M. Givens was agreed to by the Senate, and on June 1, 1935, C. J. Hardee was again appointed and commissioned to the same office by the Governor. It is further agreed that C. J. Hardee performed the duties of said office until July 7, 1936, when he was suspended by the Governor, the order of suspension omitting formal parts, being as follows:

"*Whereas,* it has been officially made to appear and upon evidence produced before me, I do find that C. Jay Hardee, Solicitor of the Criminal Court of Record of Hillsborough County, State of Florida, is guilty of Neglect of Duty in Office, in this, to-wit:

"That gambling during the years 1934 and 1935, reached its peak and was the worst in the history of Hillsborough County, having been carried on in all parts of the City of Tampa in said county, including the residential portions of the said City.

"That during the year 1934, from April 1st, to the end of the year, there were seven informations filed charging gambling and during the year 1935 no informations were filed charging gambling in any form; that two of the above referred to informations were filed in December, 1934, as a result of a raid at the Panama Cafe led by City Officers

directed and requested by the said C. Jay Hardee as Solicitor of the Criminal Court of Record of said County, and no trials have been had upon said informations, that subsequent to the raid aforementioned, and during the year 1934, the said Solicitor led another raid upon the said Panama Cafe, at which time gambling was seen in actual operation by the said Solicitor and officers of the Sheriff's office of said County, and no information has been filed as a result of said raid; that the excuse offered by the said Solicitor for not filing an information in said case was that the evidence obtained in said raid was obtained without a search warrant, yet the law provides that when a crime is committed in the presence of an officer no search warrant is necessary; that the same excuse was offered by the said Solicitor for failure to prosecute under the two informations filed by him.

"Now, THEREFORE, I, David Sholtz, Governor of the State of Florida, by virtue of the power and authority vested in me by Article Four, Section Fifteen, of the Constitution of the State of Florida, have suspended and do hereby suspend the said C. Jay Hardee, Solicitor of the Criminal Court of Record of Hillsborough County, State of Florida, until the adjournment of the next session of the Senate, upon the grounds of Neglect of Duty in Office, and the said C. Jay Hardee is prohibited from performing the duties or exercising the function of said office for the period aforesaid."

It is first contended that said order of suspension is devoid of jurisdictional facts sufficient to support any ground for which the Governor is authorized under the Constitution to suspend.

Section Fifteen of Article Four of the Constitution authorizes the Governor to suspend any officer not liable to impeachment for malfeasance, misfeasance, neglect of duty

in office, the commission of a felony, drunkenness, or incompetency, all such suspensions to be reported to the next session of the Senate. If the Senate refuses to consent to the suspension the officer suspended automatically goes back into office, but if the Senate agrees to the suspension it becomes final.

It is conceded that the law of this case is settled by State, *ex rel.* Hardie, v. Coleman, 115 Fla. 119, 155 So. 129. In the case last cited we held that the sufficiency of an order of suspension, being one affecting the rights of individuals, the courts may determine the sufficiency of the jurisdictional facts on which the Governor rests his action, but they (the courts) have no authority to determine the sufficiency of the evidence to support the grounds of suspension, that being a function solely for the Senate under such rules as it may prescribe.

We also held in Hardie v. Coleman, *supra,* that if the order of suspension names one or more of the grounds embraced in the Constitution and supports it with alleged facts sufficient to constitute the ground named it is sufficient. It is not necessary that the allegation of fact be as specific as the allegations of an indictment or information in a criminal prosecution. Being reviewable by the Senate, if it contains allegations that bear some reasonable relation to the charge made against the officer suspended it will be held sufficient.

With the rule thus approved in Hardie v. Coleman, *supra,* as a guide, let us examine the executive order here quoted. The suspension of relator is grounded solely on "neglect of duty in office," one of the grounds named in Section Fifteen of Article Four of the Constitution. It is supported by allegation to the effect that in 1934 and 1935, gambling in Hillsborough County reached its peak, that in 1934 only seven informations were filed by relator charging gambling

in said county, and that in 1935, no informations were filed by him charging gambling, that two of the informations filed in 1934 resulted from raids on the Panama Cafe requested by C. Jay Hardee in which gambling was seen carried on by the said C. Jay Hardee and the sheriff and his deputies, that no trials have been held under any of these informations and the reason given therefor by the solicitor was that the evidence in support of them was procured without a search warrant and was consequently not admissible.

Anything embraced in the order of an evidentiary character was gratuitous and had no place there, as the character, sufficiency, weight, and all things pertaining to the evidence were questions for the Senate, with which the Court has no concern. The charge made for suspension was one named in the Constitution, to knowingly permit gambling and prefer no charges therefor was a neglect of duty, and the allegations with reference to gambling certainly had some reasonable relation to the charge made against the solicitor. We express no opinion as to the weight or sufficiency of anything of an evidentiary nature in the order of suspension. This and the range the evidence may take under the charge are matters for the Senate with which we are without power to interfere.

It is next contended that the acts for which relator was suspended were committed at a time prior to the date of the beginning of his current term (during which he was suspended) and being so the Governor was without power to suspend.

To support this contention relator relies on *In Re:* Advisory Opinion to the Governor, reported in 64 Fla. 168, 60 So. 337, wherein we held that the power given the Governor to suspend an officer for malfeasance or misfeasance and to fill the vacancy thus caused by appointment is nec-

essarily confined to the current term or that for which he is then in commission. He cannot, in other words, reach back and suspend him for something that took place in a prior term, an election or new appointment having intervened.

A term of office has reference to that fixed by law and not that named in a commission or fixed by the Governor. State, *ex rel.* Landis, v. Bird and Viney, 120 Fla. 780, 163 So. 248. It appears that the current term of office of the solicitor of the Criminal Court of Record for Hillsborough County began April 11, 1933, and will, therefore, end April 11, 1937. The relator was consequently serving a portion of the same term under the commission issued to him June 1, 1935, so some facts with which he is charged occurred in and during the term in which he served until he was suspended July 7, 1936. This doctrine is of course on the assumption that the term of office of solicitor of the Criminal Court of Record runs in cycles as we have repeatedly held.

But even if this were not the case, relator's contention can avail him nothing. His duty to prosecute violations of the law continues until the offense committed is barred by the statute of limitations and if he goes out of office that duty devolves on his successor. The holding of this Court in the Advisory Opinion to the Governor, *supra,* relied on by relator, to the effect that one cannot be suspended during his current term for an offense committed in a previous term has reference to finished offenses known and condoned by election or appointment, but can have no reference to matters arising from the neglect of a continuing duty of an officer during the time in a current term he holds a commission to discharge the duties of the office.

For the reasons so stated the motion to quash is sustained.

It is so ordered.

WHITFIELD, TERRELL and BROWN, J. J., concur.

ELLIS, C. J., and DAVIS, J., dissent.

BUFORD, J., not participating.

WHITFIELD, J. (concurring).—The Constitution provides that:

"All officers that shall have been appointed or elected, and that are not liable to impeachment, may be suspended from office by the Governor for malfeasance, or misfeasance or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency, and the cause of suspension shall be communicated to the officer suspended and to the Senate at its next session. And the Governor, by and with the consent of the Senate, may remove any officer not liable to impeachment, for any cause above named. Every suspension shall continue until the adjournment of the next session of the Senate, unless the officer suspended shall, upon the recommendation of the Governor, be removed; but the Governor may reinstate the officer so suspended upon satisfactory evidence that the charge or charges against him are untrue. If the Senate shall refuse to remove, or fail to take action before its adjournment, the officer suspended shall resume the duties of the office. The Governor shall have power to fill by appointment any office, the incumbent of which has been suspended. * * *." Sec. 15, Art. IV.

The power vested in the Governor in the above quoted section of the State Constitution to suspend all appointed or elected officers who are not subject to impeachment, is an explicit executive power; and when the Governor in making a suspension order acts within his authority as stated in the

Constitution, his action may not be reviewed by the courts. State, *ex rel.* Holland, v. Ledwith, 14 Fla. 220; State, *ex rel.,* v. Johnson, 30 Fla. 433, 499, 11 So. 845, 18 L. R. A. 410. This general rule, however, is modified by the qualification that as such exercise of power affects the lawful rights of the individual officer, the jurisdictional facts, i. e. the matters and things stated in the order of suspension on which the executive grounds his cause of removal, may be considered by the courts to the extent of determining whether the facts stated have some reasonable relation to a constitutional ground of suspension. State, *ex rel.,* v. Coleman, 115 Fla. 119, 155 So. 129; State, *ex rel.,* v. Henry, 60 Fla. 246, 53 So. 742.

When the validity of an executive order of suspension from office is challenged in the courts, if the order of suspension from office states one or more of the constitutional grounds as the cause for such suspension and supports the charge with allegations of fact having "some reasonable relation" to the constitutional ground or cause of the suspension, the order may be deemed sufficient to show that the Governor acted within the power of suspension expressly conferred upon him by the Constitution; and the courts have no authority to consider the probative sufficiency of the evidentiary or other matters on which the Governor acted in making the order of suspension. It is not necessary that the allegations of fact contained in the executive order as a basis of the suspension from office, be as definite and specific as the allegations of an information or an indictment in a criminal prosecution. The order of suspension is an executive order that under the Constitution is expressly made subject to review only by the Senate; and if the order as a whole contains allegations that bear "some reasonable relation" to the charge on a constitutional ground made

against the officer, it will be adjudged as sufficient. State, *ex rel.,* v. Coleman, *supra.* The evidence before the Governor is not required to be made a part of the order of suspension.

"All reasonable intendments will be indulged in to support the sufficiency of the challenged acts of the Executive." State, *ex rel.* Joughin, 107 Fla. 850, 145 So. 174.

The courts have no authority by interpretation to add to or modify explicit provisions of the State Constitution that do not conflict with paramount Federal powers.

When the officer accepted the office, it was accepted with the qualification that he could be suspended from office by the Governor upon the grounds stated in the Constitution.

"If he is deprived of his office in accordance with the conditions of the Constitution and by the power which had this right, then he is not deprived of his property without due process of law, but according to law." State, *ex rel.,* v. Ledwith, 14 Fla. 220, 223.

The current cycle period of the four-year term of office of the county solicitor of the Criminal Court of Record for Hillsborough County began April 11, 1933, and from June 1, 1935, to July 7, 1936, the said office was filled by a commission duly issued to the relator.

The periods of time and dates referred to in the allegations of the executive suspension order in stating facts having relation to the charge of "neglect of duty in office" by the relator, were during the four-year term of the office beginning April 11, 1933, and such periods and dates were in part within the time from June 1, 1935, to July 7, 1936, during which time the relator held a commission to perform the duties of the said office until he was suspended from office by the Governor, July 7, 1936. The allegations

of the executive order of suspension manifestly and obviously have direct and substantial, reasonable relation to the charge of neglect of duty in office stated in the suspension order. The Constitution makes the State Senate, and not the court, the tribunal to review executive orders of suspension from office. State, *ex rel.,* v. Johnson, 30 Fla. 433, 11 So. 845; and when the suspension order states an executive finding that the officer is guilty of a charge based upon a constitutional ground of suspension, coupled with allegations of fact having some reasonable relation to the constitutional ground of suspension from office upon which the Executive finding and order of suspension were predicated, the court has no authority to nullify the executive order. State, *ex rel.,* v. Coleman, *supra.*

The Constitution provides that:

"The cause of suspension shall be communicated to the officer suspended and to the Senate at its next session."

This provision requires the charge as made and the evidence upon which the suspension order was made, to be communicated to the Senate which alone may review the charge and the evidence in determining, under Section 15 of Article IV of the Constitution, whether the suspended officer shall be removed from office upon the charges made and the recommendation of the Governor, or whether no action shall be taken on the Executive suspension.

No question of Executive control of, or interference with, the discretionary authority of the county solicitor in the discharge of his official duties, is involved. The terms of the Constitution authorize an executive suspension from office of a prosecuting officer of the Criminal Court of Record upon stated grounds, and provision is made for a review of the suspension by the Senate. This excludes review by the courts of an executive order of suspension from

office, except to determine whether the Executive order states findings of facts having reasonable relation to a ground of suspension from office that is expressly stated in the Constitution. Whether the facts stated in the suspension order justified the suspension from office is for the Senate, not the court, to determine. State, *ex rel.,* v. Johnson, *supra;* State, *ex rel.,* v. Coleman, *supra.*

BROWN, J., concurs.

ELLIS, C. J. (dissenting).—I am unable to agree with my colleagues, Justices WHITFIELD and TERRELL, in the conclusion at which they have arrived in this case, and the views expressed by Mr. Justice BUFORD and the reasons given for his non-participation in this case. I do agree with the conclusion reached by Mr. Justice DAVIS, but am unable to concur in the opinion and argument which he offers to support it.

C. J. Hardee was appointed solicitor of the Criminal Court of Record for Hillsborough County on June 1, 1935, to hold office until April 11, 1937. He was suspended from office by executive order dated July 7, 1936, and he filed in this Court an information in the nature of quo warranto against LeRoy Allen, who was by executive order appointed to succeed him, to test the authority by which the latter occupies the office of solicitor of the Criminal Court of Record and undertakes to discharge its functions. The writ asked for was issued by this Court on the 10th of November, 1936.

This Court held in the case of Bridges v. Henry, 60 Fla. 246, 53 South. Rep. 742, "that the jurisdictional facts on which a removal from office under Section Fifteen of Article Four of the Constitution was accomplished might be inquired into by quo warranto." (State, *ex rel.* Hatton, v. Joughin, 103 Fla. 877, 138 South. Rep. 392.) And in the

case of State, *ex rel.* Hatton, v. Joughin, 103 Fla. 877, 138 South. Rep. 392, it was said by this Court: "quo warranto being a direct attack must be predicated on direct and positive statements of legal facts supporting the cause of removal"; also that the power vested in the Governor by the constitutional section referred to above is executive.

It is in no sense judicial or quasi-judicial, but it involves judgment and discretion on the part of the Governor including the power to hear and decide, but it was stated by this Court in the last cited case that this general rule "is modified by the exception, that such exercise of power being that affecting the lawful rights of individuals, the jurisdictional facts, in other words, the matters and things on which the executive grounds his cause of removal may be inquired into by the Courts."

This is true because, as was said in the Hatton case, *supra,* "One's right to office and the emoluments thereof is protected by the Fourteenth Amendment," meaning the Fourteenth Amendment of the Federal Constitution, as his right to exercise and enjoy the office is a species of property which the law will protect and will also redress if he is wrongly deprived of it.

If it is true that quo warranto in behalf of the claimant to office under executive appointment must be supported by direct and positive statements of legal facts supporting the cause of removal of the officer whom he succeeds it follows that in quo warranto brought by the latter it must appear that the statement of legal facts in the order of his removal was not sufficient to sustain the action of the executive. Therefore, it seems to me that the question presented to this Court by the demurrer to the information and the motion to quash it must turn upon the question whether the facts alleged in the order of removal were sufficient to

support the cause of such attempted removal. If it is found that the statement of such facts is not legally sufficient to support the alleged cause of removal on which the executive acted, it follows that the demurrer and motion to quash should be overruled.

In the able opinion written by Mr. Chief Justice RANEY in the case of State v. Johnson, 30 Fla. 433, 11 South. Rep. 845, the principle is recognized that the officer has a right to the possession of his office, the emoluments thereof and the honor enjoyed in its occupancy. The qualification to such enjoyment is that he accepts the office "subject to the law of the land as to its termination, modification, and as to suspension or removal therefrom" (text 487) by the Governor, so long as the latter acts within the limits of his power.

That language strongly indicates that it was the view of the learned writer of the opinion, and of this Court which adopted it, that there were limitations upon the executive power of suspension and removal and if those limitations were disregarded by the Governor in removing an officer and depriving him of his office the executive act in attempted removal would be invalid and so held by the Court. If the Governor should attempt, for instance, to remove an officer from office because the Governor personally disliked him or because the occupant of the office was of a different political party or faction from that of the Governor and the latter should set forth that fact in the order of removal as sustaining the alleged cause of "neglect of duty," a decision by a court of competent authority that the attempted order of removal was an invalid exercise of executive power would not be inconsistent with the views expressed in the case of State v. Johnson, *supra*.

Therefore it seems to me that this Court should confine

its study to the statement of facts contained in the executive order of removal to determine whether such facts bear a substantial relation to the cause of removal and are legally sufficient, if true, to sustain the order of removal upon the ground of "neglect of duty."

The order recites that the relator was suspended for "neglect of duty in office." Then follows a recitation in the order of alleged facts which the executive states constitutes the cause of removal. In substance these facts are that "gambling" had reached its peak in Hillsborough County during the years 1934 and 1935 and was carried on in all parts of the City of Tampa including the residential portion thereof; that during the year 1934 seven informations were filed charging gambling and that during 1935 no informations were filed charging gambling; that two of those informations were filed in December, 1934, as a result of a raid upon the Panama Cafe made by city officers at the direction of Mr. Hardee, but that no trials had been had on those informations; that later in 1934 another raid was made on the Panama Cafe led by the relator, yet no informations were filed; gambling was seen in actual operation by him. The recital of facts then states that the relator gave as an excuse for not filing such informations that the evidence was obtained without a search warrant and that the same excuse was offered for failure to prosecute under the two informations filed by him.

Aside from the fact that the alleged act of neglect of duty occurred prior to the date of the relator's commission to office, which was June 1, 1935, and which commissioned him to hold the office until April 11, 1937, and the confirmation of such appointment by the Senate, was tantamount to a disregard or forgiveness of the alleged faults of the officer, if he had been guilty of any prior to such election or ap-

pointment, as stated in the dissenting opinion of Mr. Justice DAVIS, the recital of facts which the Governor deemed to be legally sufficient to sustain the charge of neglect of duty is so vague and uncertain that the accused officer could have no conception of the particular act or acts which substantially relate to the cause of removal.

Assuming that the prosecution of the two informations filed was a continuing duty of the relator, yet it is stated that his failure to prosecute was based upon the relator's opinion that the evidence available to him to support the accusations was insufficient in law. That was an exercise of judgment upon the officer's part which the order of removal illegally seeks to control.

It seems to me that no such power is vested in the executive by Article IV, Sec. 15, of the Constitution, for if it were so there would be placed in the hands of a designing and politically ambitious executive a power to build up the strength of his political organization by intimidation and fear.

It is not my conception that the framers of the Constitution intended to place such weapon in the hands of the Chief Executive.

The recital in the statement that gambling had reached its peak in Hillsborough County is likewise a vague and meaningless statement furnishing to the relator no definite or specific instance of that particular form of amusement which may be prohibited by law, and for which it becomes his duty to prosecute upon information duly and properly filed based upon affidavits of witnesses of facts sufficient in his judgment to support the accusation. There are hundreds of forms or types of gambling few of which are prohibited by law and made a crime in this State. Numerous instances may be given of a form of gambling which the

law does not prohibit, and which bears no substantial relation to the alleged cause of removal, which may furnish to the Governor, whose conscience is supersensitive on the subject of so-called immoral conduct, an excuse urging him to use the general term of "gambling" as sufficient in his judgment to warrant the exercise of the power of removal vested in him by the Constitution.

I am therefore of the opinion that the motion to quash and the demurrer should be overruled.

DAVIS, J., concurs.

DAVIS, J. (dissenting).—This Court has definitely committed itself to the doctrine that when an officer is elected for a new term (or is appointed by the Governor and confirmed by the Senate) and a new commission issued to him, that such officer may not be suspended pursuant to Section 15 of Article IV for causes arising prior to the commission held by the officer at the time of the suspension. See: Advisory Opinion to Governor Gilchrist, 64 Fla. 168, 60 Sou. Rep. 337.

It has been held that the executive order of suspension must set forth facts that bear a reasonable relation to the charges upon which the officer is attempted to be suspended, and that to this extent, the executive order of suspension is susceptible to judicial review to determine whether a constitutional cause has been assigned by the Governor as cause for removal. State, ex rel. Hardie, v. Coleman, 115 Fla. 119, 155 Sou. Rep. 129; State, ex rel. Bridges, v. Henry, 60 Fla. 246, 53 Sou. Rep. 742.

In this case we have before the Court two men claiming commissions of appointment from the same Governor covering the same term of office. Hardee has been appointed and confirmed by the Senate. Allen has been appointed pursuant to the pretended authority of an executive sus-

pension of Hardee from office under Section 15 of Article IV of the Constitution. We thus have a judicial controversy determinable in quo warranto, which this Court is required to decide, at least to the extent of determining which of the two outstanding commissions carries with it title to the office for the term covered by the two commissions that are in conflict. So there is no judicial interference by the Supreme Court with an executive power of the Governor because the authority of the Governor has been completely exercised in the issuance of the two commissions involved, only one of which can constitutionally be outstanding at the same time for the identical term of office.

To assert, as does the majority opinion, that, under the "cycle" theory, the term of office of a removed, suspended or deceased officer continues to run notwithstanding the removal, suspension or decease of the incumbent and the naming and confirmation of the Governor's appointee as the successor to such removed, suspended or deceased officer, is to assert that there may be two terms of office running together, although the office can be filled by but one person, a proposition that on its face is untenable. Board of Chosen Freeholders of Atlantic County v. Lee, 76 N. J. 327, 70 Atl. Rep. 925.

The Governor, in my opinion, has no power under Section 15 of Article IV of the Constitution to suspend, nor has the Senate any power to remove, a public officer for official acts or neglects done prior to his current term of office in which the suspension or removal is attempted. When the people have elected a man to office, or the Governor has appointed and the Senate confirmed, an appointee to an appointive office, it must be assumed that the election or appointment was made with knowledge of the officer's life and character,

and conduct in office, prior and until the time his new term begins, and that the people, or the appointing power representing the people, have decided to disregard or forgive such officer's faults, if he has been guilty of any. Conant v. Grogan, 6 N. Y. St. Rep. 322. This rule disposes of all neglects of duty charged against Hardee prior to June 1, 1935, the date his present term of office commenced.

A county Solicitor is empowered by the Constitution to act as a "one-man" grand jury. His duties are quasi-judicial in nature, and he should preserve his status and character as an impartial investigating officer charged with the responsibility of instituting criminal prosecutions against citizens for only such causes as warrant the filing and bringing to trial of the serious accusations of felony, where felonies are involved. See Sec. 8257 C. G. L., Washington v. State, 86 Fla. 533, 98 So. 605.

A county Solicitor is in no sense a county detective nor vested with the right to usurp the powers of the local sheriff and policemen as enforcement officers by ferreting out supposed crimes and prosecuting them on his own knowledge. Should he undertake to step outside of his character as an impartial representative of the government in acting as its official accuser, he would become subject to challenge as disqualified, just as members of a grand jury may become disqualified when they cease to stand impartial as disinterested investigators, by assuming to become prosecutors or complainants. See: Howell v. State, 102 Fla. 612, 136 Sou. Rep. 456; O. B. White v. State, 126 Fla. 760, 171 Sou. Rep. 809.

The Governor in making his executive order of suspension dated July 7, 1936, charged Solicitor Hardee with neglect of duty with respect to his accusatory functions, merely because Hardee, as County Solicitor exercised his judicial

discretion in a particular way not satisfactory to the Governor. In so doing he misapprehended the true meaning and intent of the constitutional provision empowering him to suspend from office for neglect of duty, and therefore in my opinion the order of suspension is invalid as against Hardee's outstanding commission to hold the office for the balance of the term for which he was appointed by the Governor and confirmed by the 1935 Senate.

The courts have no power to review the judgments and findings of a Grand Jury, or substitute accusatory officer, and certainly the Governor has no right to exercise judicial powers in that regard.

To hold otherwise is to imply a power in the Governor's office to select the names of particular citizens who shall be indicted, and to use his executive powers under Section 15 of Article IV to coerce prosecuting officers vested with the judicial discretion and power to file informations in lieu of indictments, to institute such criminal prosecutions as the Governor may direct, also suffer the penalty of dismissal from office on a charge of neglect of duty for not carrying out the Governor's orders to indict those selected for executive prosecution.

Such power has never been considered as being vested in any English King since the time of King John. Nor has it ever been invested in any Chief Executive of an American commonwealth under any system of constitutional law we have ever lived under.

Yet in accordance with the majority holding, such is now about to become the declared law of the State of Florida, inasmuch as no prosecutor can henceforth fail or neglect to file informations against any citizen whom the Chief Executive of this State may select and order to be arrested, informed against and brought to trial under penalty of sus-

pension from office of the prosecutor for neglect of duty should the prosecutor in his sound judicial judgment decide not to proceed against the designated citizen, or refuse to stultify himself by falsely swearing to an unfounded criminal information that is in legal effect nothing more nor less. than the indictment of a one-man grand jury and therefore required to be based upon something to warrant it other than the mere executive wish or whimsey of the Governor.

In counties where Criminal Courts of Record are established County Solicitors occupy the, status, and perform the functions of, a one-man Grand Jury. The Grand Jury was brought into existence as a barrier against persecution in the King's name prior to the setting up of the American Government. It was retained in the United States as an institution for the protection of the citizens against unfounded accusations, whether they should come from the government itself, or be prompted by partisan passion or private enmity. In vesting substitute powers in a "one-man" Grand Jury in particular counties of this State, the people who adopted our Bill of Rights never intended that such "one-man" Grand Jury (The County Solicitor) should exercise one whit less discretion, nor be deprived in any respect of the freedom of judgment, that rests in a Grand Jury composed of more than one man.

The Governor of this State admittedly has no power to remove or suspend a Grand Jury from its functions, merely because such Grand Jury fails to indict supposed offenders the Governor may think should be brought to trial on charges of felony. Is it reasonable or sound to assume that the Legislature, by the mere passage of a statute establishing a Criminal Court of Record in a particular county thereby abolishes the whole scheme of government for the protection of citizens from unsubstantial prosecutions for alleged fel-

onies, by making the citizen subject to the Governor's power to coerce County Solicitors to file informations against him in the Criminal Court of Record, upon any less evidentiary considerations than his case would be controlled by, were a common law Grand Jury, instead of a "one-man" Grand Jury (County Solicitor) directed to investigate it with a view to criminal prosecution?

The constitutional powers of the Courts constitute the ultimate safeguard alike of individual privilege and of government prerogative. It is clear beyond all need of exposition that it is indispensable that there should be some *non-political* forum in which the rights of the people shall be impartially debated free from any consideration save a sound interpretation and application of the law. The Criminal Courts of Record, no less than the Circuit Courts, are such forums and the Solicitors of Criminal Courts of Record should be no more amenable to executive coercion in the exercise of their accusatory powers than are Grand Juries in counties where no Criminal Courts of Record exist.

Nor is it any answer to say that the Governor is not to be presumed to unwisely or unconstitutionally exercise his powers to coercion if we acknowledge them to exist. The refutation of any such idea is found in the Constitution itself which is a living monument to the distrust the people have in their rulers when it comes to the exercise of unlimited and unreviewable powers of any kind that infringe upon the rights of citizens to be free from restraints on their freedom such as might be occasioned by prosecutions for felony instituted on any consideration other than an evidentiary one, *judicially* decided, either by a Grand Jury or a County Solicitor acting in the same manner as a Grand

Jury and clothed with all its immunities from executive coercion.

My view of this case coincides with that of the Supreme Court of the United States in the case of Rathbun v. United States, 295 U. S. 602, 79 L. Ed. 1611, 55 Sup. Ct. Rep. 869, wherein the Court said in denying the President of the United States the illimitable power to remove an officer with respect to judicial or quasi-judicial functions:

"For it is quite evident that one who holds his office only during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will."

No County Solicitor of this State (nor for that matter no Judge of a Criminal Court of Record in this State) can be depended upon to maintain an attitude of judicial independence against the executive will of the Governor with respect to institution and conduct of criminal prosecutions, or the refusal to institute and prosecute criminal cases the facts of which do not warrant prosecution in the judicial or quasi-judicial opinion of these officers, if an interpretation is put on Section 15 of Article IV of the Constitution that remits the affected County Solicitor or Criminal Court Judge solely to the State Senate, a politically motivated and not a judicially controlled body for protection of his independence of judicial judgment to decide who shall be, and who shall not be informed against, arrested and prosecuted for felony in Criminal Courts of Record in this State.

It was conceded by respondent's counsel at the oral argument before the bar of this Court that every alleged neglect of duty charged by the Governor in his order of July 7, 1936, as ground for suspension of Solicitor Hardee from office, involves a matter of discretion on the part of said Hardee as to whether or not certain criminal prosecutions

should, or should not be, brought in Hillsborough County on Hardee's official oath and responsibility as a one-man grand jury. Hardee has not been charged by the Governor with incompetency in office, so he must be assumed to be competent. He has not been suspended by the Governor for drunkenness, nor malfeasance in office, so he must be deemed to be both sober and honest.

Thus the case now before us for consideration may be otherwise stated as the simple proposition: "Does the Governor of Florida have authority to suspend a County Solicitor (one-man grand jury) from office for failure to file or prosecute informations (substitute indictments) against those whom he, as an admittedly competent, sober and honest County Solicitor vested with the same judicial discretion in the matter of preferring, or not preferring, felony accusations as is possessed by a Grand Jury, has in his sound judgment and discretion decided should not be informed against (indicted) or brought to trial, either because of insufficient evidence to convict, or because he cannot conscientiously make the oath of evidentiary fact required to support the validity of a criminal information for felony?" The majority of the Court apparently hold in the affirmative. I hold in the negative.

I have the highest rgeard and respect for the Governor who made the executive order involved in this case. But a consideration of the far reaching implication of the legal principles necessarily inherent in the predicate upon which it is vested, leaves me no alternative but to record my dissent in the hope that the majority opinion will in the future be modified, if not overruled, when more mature reflection demonstrates its unsoundness.

BUFORD, J. (not participating in hearing for reasons stated).—I shall not participate in the hearing of this case

because I think that when the Court assumed to take jurisdiction of the matter it thereby encroached upon the prerogatives, powers and duties of the Executive Branch of the Government and entered a field where the Judicial Branch of the Government is prohibited by the Constitution to function, unless requested so to do by the Chief Executive, and for the further reason that I think by taking affirmative action the Court would encroach upon the prerogatives vested by the Constitution in the State Senate. It cannot be doubted that it is the duty of the County Solicitor to prosecute the crimes referred to in the order of suspension. When a prosecuting officer refuses to prosecute criminal acts committed within his jurisdiction there may be a good and valid reason for such refusal or failure, while on the other hand such refusal or failure may constitute a gross neglect of duty. In this case whether the failure to prosecute was justifiable or constituted a neglect of duty is a question for the Senate and the Senate alone to determine.

In State v. Joughin, 103 Fla. 877, 138 Sou. 393, we held:

"The power vested in the Governor to suspend an officer under Section 15, Article IV, of the Constitution is executive. It is in no sense judicial or quasi-judicial."

In the case of State v. Johnson, 30 Fla. 433, 11 Sou. 845, it was held:

"1. The Governor has power, under Section 15 of the executive article of the Constitution, when acting within the authority there conferred, to hear and decide as to the existence of any alleged neglect of duty in office as a ground for suspending an officer. This authority, whether judicial or administrative in its nature, is vested by the Constituany other branch of the government.' In State, *ex rel.* At-

ment, and does not appertain to, and cannot be exercised by, the courts.

"3. So long as the Governor's action in suspending an officer is within the limits of his constitutional power, the courts cannot interfere to arrest his action. He is the exclusive judge, in so far as the courts are concerned, of the sufficiency of the proof of the charge, not merely because the courts have been given no power of review, but for the further reason that the Senate, a branch of the legislative department, has been granted such power."

The opinion in that case was written by Mr. Chief Justice RANEY. It is an exhaustive and well reasoned opinion and in it we find the following:

"The authorities are all to the effect that a grant of the power to remove, either for cause or at discretion, carries with it the exclusive power to hear and decide; and whereas the courts are entirely powerless where the power is discretionary, they are equally so where it is for cause, if the grantee of the power acts within its limits, and upon notice, if notice is required; if the removal is for a cause designated by or following within the grant, the grantee or depositary of the removing power is the sole judge of the sufficiency of the evidence to justify the removal. That such is the case where the power is discretionary, is settled by this Court in State, *ex rel.* Holland, v. Ledwith, 14 Fla. 220. In State, *ex rel.*, v. Doherty, 25 L. Ann. 119, where the executive power of removing the officer was 'for refusing or failing to do his duty as prescribed by this Act,' it was said: 'The grant of power to the Executive to remove an officer for a certain cause implies authority to judge of the existence of the cause. The power vested exclusively in executive discretion cannot be controlled in its exercise by any other branch of the government.' It State, *ex rel.* At-

torney General, v. Hawkins, 44 Ohio St. 98, the decision
was that where charges embodying facts which, in judgment
of law, constitute official misconduct, are preferred to the
Governor, of which notice is given the members charged,
and he acting upon the charges so made removes them from
office, his action is final and cannot be reviewed or held for
naught by the courts on a proceeding in *quo warranto,*
whether he erred or not in exercising the power conferred
upon him. And in Keenan v. Perry, 24 Texas 253, where
the Governor was given power of removal for certain
enumerated causes, the decision was that no principle is
more firmly established than that where a special and ex-
clusive authority is delegated to any tribunal or officer of
the government, and no mode of revising his decision by
appeal or otherwise is provided by law, his action is final
and conclusive of the matter, and the law makes him the
sole judge of the existence of the cause of removal. Dixon,
C. J., speaking for the Court in State, *ex rel.,* v. McGarry,
21 Wis. 496, a *quo warranto* proceeding where a statute
gave a board of supervisors power to remove for incompe-
tency, improper conduct or other cause satisfactory to such
board, said, 'We are clearly of opinion that the power of
the board is absolute and its determination final when acting
within the scope of the power. The board may remove for
incompetency, improper conduct or other cause *satisfactory*
to the board."

Later in that same opinion the writer said:

"And though this power of suspension might have been
bestowed without any right of hearing in the officer, or
with the right of hearing before there could be any exercise
of power, neither course has been pursued. The provision
that the Governor 'may reinstate the officer so suspended
upon satisfactory evidence that the charge or charges against

him are untrue' was not intended to merely give an arbitrary or willful discretion to the Executive to make inquiry or not as might please a caprice or a prejudice, but it was both to impose upon him the duty of hearing evidence upon the charge and to secure to the suspended officer the constitutional right to be heard by the Governor upon the charges which the latter has communicated to him upon suspending him. It is as much the duty of the Governor on suspending an officer to notify him of the cause of the suspension, or charge upon which he has been suspended as it is to suspend when the facts of a particular case, viewed in the light of public weal, demand removal; or as it is to refuse to suspend when they do not seem to demand removal or to reinstate when under a misapprehension he may have erroneously suspended an officer. By this provision last quoted above the officer's right to a hearing has been postponed till after the suspension. This is one of the conditions upon which he accepts the office, and it is as obligatory upon him as are those as to age, residence or bond, or any other which the Constitution or any valid statute may prescribe. That a Governor may give notice of the charges before suspension does not defeat the plain policy of the Constitution, not to require him to do so, nor does it relieve him from the specific duties imposed by that instrument in this matter. It cannot be denied that there may be cases in which the public interest would suffer grievous detriment by postponing the suspension till after the hearing. The hearing contemplated, though its regulation is left to the Chief Executive (at-least until the law-making power shall act) is a full and fair hearing and often will take much time. It is always to be presumed that he will not hesitate to reinstate at any time, at least in the recess of the Senate, where it may be shown that he has erred in the act of sus-

pension. This is, of course, a consideration which the people have confided to the conscience of the Executive under his responsibility to them, yet it is patent that the exercise of the executive power to reinstate implies the status of suspension in the officer.

"In reaching this conclusion we have not omitted to give serious consideration to the officer's property rights in his office; the right to its tenure and the enjoyment of its profits and honors against all unlawful invasion. Of course, he is a public agent or servant, and has no such title to his office as prevents the power which gave it from terminating it or changing it. He holds subject to the law of the land as to its termination, modification and as to suspension or removal therefrom. State, *ex rel.*, v. Ledwith, State, *ex rel.*, v. Hawkins, Sweeney v. Stevens, and Donahue v. County of Will, *supra;* Taft v. Adams, 3 Gray 127. So long as the Governor acts within the limits of his power the courts are powerless. The Constitution has made the Senate the sole check upon any erroneous action on his part. Any mere error of judgment, whether free from or attended by improper motive is beyond our cognizance, and not merely because, as in most of the adjudicated cases there has been given no power to any tribunal to correct or arrest the effect of his error, but for the reason that a branch of the legislative department has been given that express power."

It is true that this Court has heretofore assumed jurisdiction in several cases of this sort, among which was that of State, *ex rel.* Bridges, v. Henry, 60 Fla. 246, 53 Sou 742, in which case this Court reversed the Circuit Court in which the late Honorable John W. Malone had entered an order denying the prayer of an information in the nature of quo warranto and refusing to issue writ of quo warranto, and

in which he stated as reason for his refusal to grant the writ:

"And the Court, being of the opinion that the Judiciary is without jurisdiction to review the action of the Governor and the Senate complained of in said information."

In that case this Court held:

"Removal from office being authorized only for certain causes, the court may inquire into the existence of the jurisdictional facts; that is, whether the facts upon which the removing power acted were legal cause for removal."

Mr. Justice SHACKLEFORD dissented and wrote an opinion embracing his reasons for dissent. I think that the conclusion of the Circuit Judge in that case was the correct one and that what was said by this Court in that case should now be overruled, unless the Court wishes to perpetuate the error which was then committed.

For the reasons above stated, I recorded my vote against issuing the rule *nisi* in this case and I now record my position as being against the Court taking any further affirmative action in the matter.