# Supreme Court of Florida

_____

No. SC2023-1246

_____

**MONIQUE HAUGHTON WORRELL,**
Petitioner,

vs.

**RON D. DESANTIS, GOVERNOR,**
Respondent.

June 6, 2024

PER CURIAM.

Monique H. Worrell petitions this Court for a writ of quo warranto and a writ of mandamus. In Executive Order 23-160 (Executive Order), Governor Ron DeSantis suspended her from the office of State Attorney for the Ninth Judicial Circuit. We have jurisdiction. *See* art. V, § 3(b)(8), Fla. Const. We deny Worrell's petition.

## I

The Executive Order alleges in summary that "during Worrell's tenure in office, the administration of criminal justice in the Ninth

Circuit has been so clearly and fundamentally derelict as to constitute both neglect of duty and incompetence."

In specific allegations running to fifteen pages, the Executive Order states that Worrell authorized or allowed charging practices that "permitted violent offenders, drug traffickers, serious juvenile offenders, and pedophiles to evade incarceration when otherwise warranted under Florida law." For example, the Executive Order alleges Worrell authorized or allowed practices that prevented or discouraged assistant state attorneys from obtaining meritorious minimum mandatory sentences for both drug trafficking offenses as set forth in section 893.135, Florida Statutes (2023), and gun crimes as set forth in sections 775.087(2)-(3) and 27.366, Florida Statutes (2023). It cites Worrell's prosecutorial record as support for these allegations—stating, for example, that of the 130 cases involving possession of a firearm by a convicted felon referred to the Ninth Circuit by the Osceola County Sheriff's Office in 2021 and 2022, only five resulted in a minimum mandatory sentence. As another example, the Executive Order says that of the 58 non-homicide robbery-with-a-firearm cases referred by the Osceola County Sheriff's Office to the Ninth Circuit during that same time,

- 2 -

only one, as of May 2023, had resulted in the minimum mandatory sentence.

The Executive Order also states Worrell authorized or allowed practices or policies that prevented assistant state attorneys from seeking certain sentencing enhancements, including for prison releasee reoffenders pursuant to sections 775.082(9)(a)1.-2., and 3.d., Florida Statutes (2023), and habitual violent felony offenders pursuant to sections 775.084(1)(b) and (4)(b), Florida Statutes (2023).  In addition, citing data from the Florida Department of Corrections, it alleges Worrell authorized limited charges for possession of child pornography—even when additional counts could have been charged and proven at trial pursuant to section 827.071(5)(a), Florida Statutes (2023).  And, it says, Worrell's subordinates permitted or required assistant state attorneys to disregard statutory limitations on withholding adjudication— namely, sections 775.08435(1)(b) and (d), Florida Statutes (2023)— and to seek additional withholds even when doing so violated Florida law.

For these reasons, says the Executive Order, the State Attorney's Office for the Ninth Judicial Circuit has suffered a critical

- 3 -

loss of experienced prosecutors. Its systemically poor performance amounts to a neglect of its duties and incompetence. And, concludes the Executive Order, this neglect of duty and incompetence endangers the public safety and welfare.

## II

"[T]he governor may suspend from office any state officer not subject to impeachment . . . for . . . neglect of duty . . . [or] incompetence." Art. IV, § 7(a), Fla. Const. Worrell is not subject to impeachment. She is thus constitutionally subject to suspension. And, unless she is first reinstated by the Governor, it is the Florida Senate that "may, in proceedings prescribed by law, remove from office or reinstate the suspended official." Art. IV, § 7(b), Fla. Const.

"Although the text of article IV, section 7 does not attribute any role to the courts in suspension matters, our precedents recognize a narrow judicial role in reviewing the face of a suspension order . . . ." *Warren v. DeSantis*, 365 So. 3d 1137, 1139 (Fla. 2023). We have said our task is to determine whether the governor has met the constitutional mandate to "state[] the grounds" of the officer's suspension. *Israel v. DeSantis*, 269 So. 3d 491, 495 (Fla. 2019). We determine whether the order "contains

allegations that bear some reasonable relation to the charge made against the officer." *Id.* at 497. Stated differently, "[w]here an executive order of suspension 'names one or more of the grounds embraced in the Constitution and clothes or supports it with alleged facts sufficient to constitute the grounds or cause of suspension, it is sufficient.' " *Id.* at 495 (quoting *State ex rel. Hardie v. Coleman*, 155 So. 129, 133 (Fla. 1934)).[1]

Our review is thus deferential in two respects: we limit ourselves to confirming that the governor has specified the applicable grounds for suspension under article IV, section 7; and, in reviewing the factual allegations in the suspension order, we ask

---

1. The dissent, in accepting these premises, makes plain that its primary quarrel is with the Florida Constitution, not with our decision. It laments the "immense authority to override the will of the voters" conferred by article IV, section 7(a), which works "a glaring disparity between the due process afforded to officers subject to impeachment . . . and those who are subject to suspension." Dissenting op. at 14, 16. Our constitution, it says, "in effect authorizes the governor to override the will of the majority of voters who elected the official and to appoint a replacement of the governor's choosing." *Id.* at 17. Perhaps. But it is our constitution, and not "the many facets of societal interaction" faced by prosecutors, on which this case turns. *Id.* at 20.

only whether those allegations bear a reasonable relation to the asserted basis for the suspension.

The Executive Order passes this test. It "names the grounds for [Worrell's] suspension—neglect of duty and incompetence—and provides various factual allegations that reasonably relate to those grounds of suspension." *Israel*, 269 So. 3d at 496. As this Court has stated, and as the Executive Order recites, "neglect of duty" means "the neglect or failure on the part of a public officer to do and perform some duty or duties laid on him . . . by law. It is not material whether the neglect be willful, through malice, ignorance, or oversight." *Id.* at 496 (citation omitted); *see also State ex rel. Hardee v. Allen*, 172 So. 222, 224 (Fla. 1937) (finding it a neglect of duty "to knowingly permit [criminal conduct] and prefer no charges therefor"). And "incompetency" refers to "any physical, moral, or intellectual quality, the lack of which incapacitates one to perform the duties of his office." *Israel*, 269 So. 3d at 496 (citation omitted). Incompetence "may arise from gross ignorance of official duties or gross carelessness in the discharge of them . . . [or] from lack of judgment and discretion." *Id.* (omission and alteration in original) (citation omitted).

Ultimately, a state attorney like Worrell is tasked with the "duty to prosecute violations of the law." *Hardee*, 172 So. at 225; *see also Austin v. State ex rel. Christian*, 310 So. 2d 289, 293 (Fla. 1975) (state attorneys are "charged with the responsibility of prosecutions in the circuit in which [they are] elected" (citation omitted)).[2] As explained above, the Executive Order alleges that Worrell's practices allowed violent offenders, drug traffickers, serious juvenile offenders, and pedophiles to evade incarceration warranted under state law. Specifically, it alleges Worrell neglected her duties and acted incompetently by authorizing or allowing policies that prevented her former office from obtaining meritorious, mandatory minimum sentences and certain sentencing enhancements, contravening sections 27.366, 775.082(9), 775.084(1)(b), 775.084(4)(b), 775.087(2)-(3), and 893.135, Florida Statutes; limited the number of charges against defendants in child pornography cases, contravening section 827.071(5)(a), Florida

---

2. The dissent seems surprised that a "state attorney may . . . face suspension and replacement despite having been overwhelmingly elected by the voters of the circuit." Dissenting op. at 24. An elected official's margin of victory is of no constitutional relevance to the governor's suspension power.

Statutes; and allowed her subordinates to permit or require the disregard of statutory limitations on withholding adjudications, contravening sections 775.08435(1)(b) and (d), Florida Statutes.

A facial review of the Executive Order shows that it "contains allegations that bear some reasonable relation to the charge made" against Worrell. *Israel*, 269 So. 3d at 497; *see also Jackson v. DeSantis*, 268 So. 3d 662, 663 (Fla. 2019) (finding the executive order satisfied the Court's limited review where it suspended a state official because of her alleged "failure to provide adequate, necessary, and frequent training, a lack of supervision of school district personnel, and a failure to implement adequate safe-guards, policies, and reporting requirements"). We have said that the "some reasonable relation" standard applicable in this context is "'a low threshold' to satisfy." *Warren*, 365 So. 3d at 1139 (citation omitted); *see also Israel*, 269 So. 3d at 496 (considering whether the executive order "on the whole" satisfied the reasonable-relation test (citation omitted)); *Hardee*, 172 So. at 224 (stating that allegations in a suspension order need not be as "specific as the allegations of an indictment or information in a criminal prosecution").

We cannot agree with Worrell that the allegations in the Executive Order are impermissibly vague, nor that they address conduct that falls within the lawful exercise of prosecutorial discretion.

Worrell's objection as to vagueness is really about the sufficiency of the evidence marshaled in the Executive Order. As we have explained, "where the executive order of suspension contains factual allegations relating to an enumerated ground for suspension, the Constitution prohibits the courts from examining or determining the sufficiency of the evidence supporting those facts." *Israel*, 269 So. 3d at 495. This is because the trier of fact in these matters—that is, the body that determines whether the allegations are sufficient to prove the charges of "neglect of duty" and "incompetence"—is the Senate. Art. IV, § 7(b), Fla. Const.; *see also* Fla. S. Rule 12.15 (2024) ("A preponderance of the evidence standard shall be used by each Senator when determining whether the suspended official warrants removal based on the grounds alleged by the Governor.").

In any event, the Executive Order makes factual allegations of some specificity. These include citations to prison admissions data

from the Ninth Judicial Circuit; briefing reports from the Florida Department of Juvenile Justice; and documents illustrating the alleged harms that the Governor argues constitute neglect of duty and incompetence. To acknowledge the specificity of these allegations does not trespass on the Senate's factfinding role. *See Israel*, 269 So. 3d at 497 (Muñiz, J., concurring) ("It is not this Court's role to weigh the sufficiency of the evidence or to second-guess the governor's exercise of a discretionary function under the Constitution.").

What is more, we have said that a suspension order does not infringe on a state attorney's lawful exercise of prosecutorial discretion where it alleges that such discretion is, in fact, not being exercised in individual cases but, rather, that generalized policies have resulted in categorical enforcement practices. *See Ayala v. Scott*, 224 So. 3d 755, 759 (Fla. 2017) (upholding an executive order reassigning death-penalty eligible cases and reasoning that the state attorney's "blanket refusal to seek the death penalty in any eligible case . . . [did] not reflect an exercise of prosecutorial discretion; it embodie[d], at best, a misunderstanding of Florida law"); *Hardee*, 172 So. at 223-25 (upholding the suspension order of

a solicitor that cited his "neglect of duty in office" based on his decision not to prosecute certain gambling cases). While broad in its lawful scope, prosecutorial discretion is no complete defense to an allegation of incompetence or dereliction of duty. *See, e.g.*, *Hardee*, 172 So. at 223-25.

### III

For these reasons, we deny Worrell's petition for a writ of quo warranto.[3]

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and SASSO, JJ., concur.
FRANCIS, J., concurs in result with an opinion.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

FRANCIS, J., concurring in result.

Today's decision correctly denies Ms. Worrell's petition.

---

3. To the extent she seeks mandamus relief, we dismiss Worrell's petition as an improper vehicle for challenging the exercise of the governor's suspension power. "[T]he proper vehicle to challenge whether the Governor properly exercised the suspension power" is a petition for a writ of quo warranto. *Warren*, 365 So. 3d at 1142.

I write separately only to reiterate my view that we should reconsider the manner in which we review suspension cases. By that, I mean we should hew more strictly to the textual demands of the constitution and consider whether the political question doctrine is implicated in deciding these cases. *See Warren v. DeSantis*, 365 So. 3d 1137, 1143-45 (Fla. 2023) (Francis, J., concurring) (recommending incorporating the political question doctrine into our suspension case review and doing away with the current practice of reviewing suspension orders for whether they reasonably relate to an enumerated ground).

Because of the manner in which we currently review suspension cases, we've also improperly expanded our authority to issue writs of quo warranto. As we recently said in *West Flagler Associates, Ltd. v. DeSantis*, writs of quo warranto were historically narrow in scope and limited by their common law background. 49 Fla. L. Weekly S69 (Mar. 21, 2024); *see generally* 3 William Blackstone, *Commentaries on the Laws of England* *262 (defining the English conception of quo warranto as a "writ of right for the king, against [someone] who . . . usurps any office, franchise or liberty" of the Crown). They were granted only upon a showing that

the challenged official lacked the authority to exercise the power he or she did; not when the official—who clearly had the authority—*improperly exercised said power.*  *See W. Flagler Assocs.*, 49 Fla. L. Weekly S69; *State v. Tampa Waterworks Co.,* 47 So. 358, 359 (Fla. 1908) ("The question is the existence of authority, not the proper exercise of it.").

Continued adherence to the current manner of deciding these suspension cases, I believe, does a disservice to "our state constitution's clear commitment of the power to review suspensions to the Senate," *Warren*, 365 So. 3d at 1144 (Francis, J., concurring), and expands judicial power beyond what the constitution bears.

LABARGA, J., dissenting.

Article IV, section 7(a) of the Florida Constitution authorizes the governor to suspend from office by executive order any state officer not subject to impeachment.  This authority includes the suspension of duly elected constitutional officers such as Florida's twenty state attorneys.  Once suspended from office, the elected official is prohibited from serving and the governor "may fill the office by appointment for the period of suspension."  *Id.*  Given this

- 13 -

immense authority to override the will of the voters, article IV, section 7(a) requires the governor to "stat[e] the grounds" for such action in the executive order.[4]

On August 9, 2023, the Governor issued Executive Order 23-160, "immediately" suspending Monique H. Worrell, the State Attorney for the Ninth Judicial Circuit of Florida, and appointing Andrew A. Bain to replace her "for the duration of the suspension."

The Ninth Judicial Circuit of Florida consists of a large metropolitan area, encompassing Orange and Osceola counties. Worrell was overwhelmingly elected in 2020 with more than sixty-five percent of the vote.

## Judicial Review

In Worrell's case and other article IV, section 7(a) suspension cases, the executive order is the charging document. Without judicial review of the executive order to ensure that the suspended

---

4. Article IV, § 7(a) limits the "grounds" to malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony.

officer is provided sufficient notice to mount a defense, nothing stands between the executive order and a senate trial.

While I recognize this Court's narrow role in reviewing the governor's exercise of the suspension power under article IV, section 7(a), this Court's review does entail a determination of whether an executive order carrying out such suspension "*allege[s] facts sufficient to constitute the grounds or cause of suspension.*" *Israel v. DeSantis*, 269 So. 3d 491, 495 (Fla. 2019) (emphasis added) (quoting *State ex rel. Hardie v. Coleman*, 155 So. 129, 133 (Fla. 1934)).

In stark contrast to the charging process when an officer is suspended under article IV, section 7(a), when officers *subject to impeachment* under article III, section 17 are accused of misconduct, various procedures occur *before* an officer is impeached or charged.[5]  For instance, "[t]he speaker of the house of

---

5.  In relevant part, article III, section 17(a)-(b) provides:

SECTION 17.   Impeachment.—

(a)   The governor, lieutenant governor, members of the cabinet, justices of the supreme court, judges of district courts of appeal, judges of circuit courts, and judges of county courts shall be liable to impeachment

- 15 -

representatives shall have power at any time to *appoint a committee to investigate charges* against any officer subject to impeachment." Art. III, § 17(a), Fla. Const. (emphasis added). What is more, an officer is not "disqualified from performing any official duties" *until the officer is impeached* by two-thirds of the house of representatives, "and, unless *impeached,* the governor may by appointment fill the office until completion of the trial." Art. III, § 17(b), Fla. Const. (emphasis added).

Thus, the charging processes for removing constitutional officers from their official duties reveal a glaring disparity between the due process afforded to officers subject to impeachment under article III, section 17, and those who are subject to suspension

---

for misdemeanor in office. The house of representatives by two-thirds vote shall have the power to impeach an officer. The speaker of the house of representatives shall have power at any time to appoint a committee to investigate charges against any officer subject to impeachment.

(b)   An officer impeached by the house of representatives shall be disqualified from performing any official duties until acquitted by the senate, and, unless impeached, the governor may by appointment fill the office until completion of the trial.

under article IV, section (7)(a). Especially in light of this disparity, this Court's review of the sufficiency of the allegations in the executive order plays a vital role in ensuring an appropriate constitutional check on the governor's suspension authority.

After all, where the suspension involves an elected official not subject to impeachment, such as Worrell, the Florida Constitution in effect authorizes the governor to override the will of the majority of voters who elected the official and to appoint a replacement of the governor's choosing.

Because the bedrock of our democracy is the right to elect our public officials in fair and open elections, the suspension of a duly elected constitutional officer must be viewed as an enormous undertaking that requires clear justification. At the very least, the allegations must be confined to the specific grounds permitted by article IV, section 7(a), and the official in question should be apprised of the specific allegations giving rise to the suspension to ensure an opportunity to mount a meaningful defense. *See State ex rel. Hardee v. Allen*, 172 So. 222, 224 (Fla. 1937).

In *Israel*, while I agreed that the executive order at issue met this Court's narrow standard of review, I emphasized that as

- 17 -

opposed to vague assertions, an executive order "must allege specific, detailed facts which support and allow for meaningful review by the Senate." 269 So. 3d at 498 (Labarga, J., concurring in result only).

Further, I emphasized concerns that are especially relevant here:

> This requirement, in my view, is of paramount importance when the official in question was duly elected by the voters. Furthermore, the suspension order must provide the official in question with sufficient notice of the allegations to allow the official to mount a meaningful defense.
> This Court noted in *State ex rel. Hardee v. Allen*, 172 So. 222, 224 (Fla. 1937), that "[i]t is not necessary that the allegation[s] of fact be as specific as the allegations of an indictment or information in a criminal prosecution." The allegations must, however, identify the specific instances of alleged misconduct with sufficient detail to facilitate meaningful review by the Senate, by this Court when applicable, and to allow the official to mount a defense. An executive order which presents only general or conclusory allegations will not suffice. This is not a demanding standard, but it is nonetheless a substantive requirement imposed by the Florida Constitution, and this Court is obligated to vacate any suspension which does not satisfy it.

*Id.* (alterations in original) (footnote omitted).

## State Attorneys

"In each judicial circuit a state attorney shall be *elected* for a term of four years." Art. V, § 17, Fla. Const. (emphasis added). The role of the state attorney is complex and multifaceted, and while elected through the partisan political process, the state attorney is subject to the ethical rules of the legal profession. "[P]rosecutors, like all lawyers, have ethical responsibilities. *Most significant among these is a duty to seek justice.*" *Ritchie v. State*, 344 So. 3d 369, 393 (Fla. 2022) (Labarga, J., concurring in part and dissenting in part) (alteration in original) (quoting *Lewis v. State*, 711 So. 3d 205, 208 (Fla. 3d DCA 1998)). "This duty must not be overshadowed by the prosecutor's interest in obtaining a particular outcome . . . ." *Id.* at 394.

Guided by these rules that regulate the legal profession, a state attorney has responsibilities to the citizenry, to victims of crime, to investigating agencies, and to the court. In the Rules Regulating The Florida Bar, the preamble to the Rules of Professional Conduct (Chapter 4) explains: "A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for

- 19 -

the quality of justice." Because of this, a state attorney's role does not fall squarely within the traditional role of law enforcement. Any discussion concerning the role of Florida's twenty state attorneys and their impact on the many facets of societal interaction must begin with a basic understanding of this complex role.

**State Attorneys Must Respond to the Needs of Their Circuits**

Approximately twenty-two million people live in Florida. Our state is a geographically large state expanding from Pensacola in the western panhandle, to Jacksonville in the east, to Key West in the south. This state encompasses heavily populated metropolitan areas like Orlando where Worrell served as state attorney. It also encompasses smaller, less populated areas. The result is a culturally rich and diverse state that attracts people from all over our country and the world.

Varying geographic and cultural influences throughout Florida present state attorneys with very different challenges and require different considerations and approaches. Policies that may work in Miami-Dade County may not work well in Lake County or vice-versa. Thus, Florida's twenty state attorneys must have the discretion to address specific challenges as they come up. And they

do, every day, having been entrusted by the citizens of their circuits to exercise prosecutorial discretion regarding where to dedicate the very limited resources of their offices.

Once an arrest is made in a criminal case, the state attorney inherits the sole responsibility for bringing the case to a final disposition before our state's judicial system. While the decision to make an arrest on a given charge may seem clear when the evidence is gathered during the investigation stage, it is the state attorney who is responsible for proving the charges brought against the accused beyond a reasonable doubt during a bench or jury trial—an undertaking that requires strict adherence to the rules of evidence, rules of criminal procedure, and rules of judicial administration—all while complying with the ethical rules and standards required of all lawyers. *See, e.g.,* R. Regulating Fla. Bar 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."); R. Regulating Fla. Bar 4-3.3(a)(3) ("A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the

- 21 -

controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").

Notably, state attorneys are also governed by specific rules within the Rules Regulating The Florida Bar. Rule 4-3.8, Special Responsibilities of a Prosecutor, provides:

> The prosecutor in a criminal case must:
>
> (a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;
> (b) not seek to obtain from an unrepresented accused a waiver of important pre-trial rights such as a right to a preliminary hearing; and
> (c) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

Further, in addition to supervising the litigation aspect of criminal cases, state attorneys develop and facilitate programs intended to make their communities safer. Where appropriate, these programs permit the use of prosecutorial discretion to balance punishment with diversionary efforts.

In some cases, to achieve the most just outcome possible, state attorneys must make difficult decisions regarding (1) final dispositions of cases where the proof falls apart—sometimes in the middle of trial; (2) charging decisions in cases where the proof of guilt was not strong to begin with; or (3) charging decisions in cases where, given the circumstances involved, justice merits considerations of leniency. State attorneys throughout Florida make such decisions when necessary. When cases present any of the situations described above, it is not unusual for state attorneys to make fundamental changes in the direction of a case, such as declining to pursue certain charges. For instance, in order to reach a negotiated final disposition, a state attorney may deem it necessary to drop a firearm charge even though it carries a mandatory prison sentence because trial preparation reveals evidentiary problems that would diminish the likelihood of a guilty verdict from a jury.

Indeed, state attorneys commonly engage in such practices when required by the facts and circumstances of a specific case. For this reason, it is difficult to grasp how Worrell, given the specific challenges and circumstances posed by her diverse circuit in

dealing with specific cases, will be able to mount a meaningful defense to allegations of "incompetence" and "neglect of duty"—for basically engaging in similar practices, even if with greater frequency, as other state attorneys throughout our state.

If this Court permits Worrell's suspension to stand based on the allegations set forth in the executive order, any time a state attorney's office in Florida engages in similar case dispositions with some regularity because the specific challenges of the moment in the circuit require it, that state attorney may also face suspension and replacement despite having been overwhelmingly elected by the voters of the circuit.

### Conclusion

In this case, I would grant Worrell's petition for quo warranto relief because the allegations in the executive order are insufficient to provide her with sufficient notice to allow her to mount a meaningful defense.

Because the majority has decided not to do so, I respectfully dissent.

Original Proceeding – Quo Warranto

Jack E. Fernandez, Jr. and Sara Alpert Lawson of Zuckerman Spaeder LLP, Tampa, Florida; Devon Galloway of Zuckerman Spaeder LLP, New York, New York; and Mark J. Rochon and Laura G. Ferguson of Miller & Chevalier Chartered, Washington, District of Columbia,

     for Petitioner, Monique Haughton Worrell

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa and Daniel William Bell, Chief Deputy Solicitors General, David M. Costello, Deputy Solicitor General, and Robert Scott Schenck, Assistant Solicitor General, Office of the Attorney General, Tallahassee, Florida; Ryan Newman, General Counsel, Executive Office of the Governor, Tallahassee, Florida; and George T. Levesque and Jeff Aaron of GrayRobinson, P.A., Tallahassee, Florida,

     for Respondent, The Honorable Ron DeSantis, in his Official Capacity as Governor of Florida

James E. Felman, Katherine Earle Yanes, Kristin A. Norse, and Stuart C. Markman of Kynes, Markman & Felman, P.A., Tampa, Florida,

     for Amici Curiae 121 current and former prosecutors, Attorneys General, law enforcement officials and leaders, former judges, United States Attorneys, and federal officials

Matthew A. Goldberger of Matthew A. Goldberger, P.A., West Palm Beach, Florida, and Jonathan B. Miller of the Public Rights Project, Oakland, California,

     for Amici Curiae current and former Elected Officials

Jeffrey M. Harris, Rachael C. Tucker, and R. Gabe Anderson of Consovoy McCarthy PLLC, Arlington, Virginia; Jason Gonzalez of Lawson Huck Gonzalez, PLLC, Tallahassee, Florida; and Gene P.

Hamilton of America First Legal Foundation, Washington, District of Columbia,

for Amici Curiae former United States Attorneys General